IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bureau of Consumer Financial Protection, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | |
| Townstone Financial, Inc., | ) ) | |
| Defendant. | ) | |

## COMPLAINT

The Bureau of Consumer Financial Protection ("Bureau") files this Complaint against Townstone Financial, Inc. ("Townstone") and alleges as follows.

## INTRODUCTION

1. The Bureau brings this action against Townstone under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5536(a)(1)(A), to remedy discrimination in Townstone's mortgage lending.

2. ECOA and its implementing regulation, Regulation B, 12 C.F.R. pt. 1002, make it illegal for a creditor to discriminate against an applicant in any aspect of a credit transaction on the basis of, among other characteristics, race, color, or national origin. 15 U.S.C. § 1691(a); 12 C.F.R. § 1002.4(a). ECOA and Regulation B

1

prohibit any statements, acts, or practices that would discourage on a prohibited basis an applicant or prospective applicant from applying for credit. 15 U.S.C. § 1691(a); 12 C.F.R. § 1002.4(b); 12 C.F.R. pt. 1002, Supp. I, 1002.4(b)(1) ("In keeping with the purpose of the Act—to promote the availability of credit on a nondiscriminatory basis—§ 1002.4(b) covers acts or practices directed at prospective applicants that could discourage a reasonable person, on a prohibited basis, from applying for credit.").

3. Regulation B also provides that "prohibited basis" in ECOA includes "the characteristics of individuals with whom an applicant is affiliated or with whom the applicant associates," such as "the race of other residents in the neighborhood where the property offered as collateral is located." 12 C.F.R. pt. 202, Supp. I, 202.2(2)(z).

4. From January 1, 2014, through December 31, 2017 ("the relevant period"), Townstone was a non-depository mortgage lender and mortgage broker exclusively engaged in retail-mortgage lending. Based on Home Mortgage Disclosure Act ("HMDA") data from 2014 through 2017, Townstone received an average of 740 mortgage-loan applications each year. Townstone acted as a correspondent lender for the overwhelming majority of its business and also brokered an average of 60 total Federal Housing Administration and Veterans Administration home loans each year. During the relevant period, Townstone ranked in the top 10% of lenders that drew

applications from the Chicago-Naperville-Elgin Metropolitan Statistical Area ("Chicago MSA").

5. From at least 2014 through 2017, Townstone engaged in unlawful redlining and acts or practices directed at prospective applicants that would discourage prospective applicants, on the basis of race, from applying for credit in the Chicago MSA.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1); presents a federal question, 28 U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

7. Venue is proper in this district because Townstone is located, resides, and does business in this district. 12 U.S.C. § 5564(f).

8. The Bureau is an independent agency of the United States created by the CFPA. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority, including the authority to enforce ECOA. 12 U.S.C. §§ 5564(a)–(b), 5481(12)(D) & (14).

9. Townstone is incorporated in the State of Illinois and headquartered in Chicago. Townstone operates in five states—Illinois, Indiana, Michigan, Wisconsin, and Florida—with over 90% of its mortgage lending in the Chicago MSA.

10. Townstone is subject to the federal laws governing fair lending, including ECOA and its implementing regulation, Regulation B.

11. Townstone is a "creditor" under ECOA. 15 U.S.C. § 1691a(e).

12. Townstone is a "covered person" under the CFPA. 12 U.S.C. § 5481(6)(A) & (15)(A)(i).

## FACTUAL ALLEGATIONS

13. During the relevant period, Townstone engaged in acts or practices directed at prospective applicants that discouraged, on the basis of race, prospective applicants from applying to Townstone for credit in the Chicago MSA. Specifically, during its weekly marketing radio shows and podcasts, Townstone made statements about African Americans and predominantly African-American neighborhoods that would discourage African-American prospective applicants from applying to Townstone for mortgage loans.[1]

14. In addition, during the relevant period, Townstone engaged in unlawful redlining by making these discouraging statements and engaging in additional acts or practices that (a) discouraged prospective applicants living in African-American neighborhoods in the Chicago MSA from applying to Townstone for mortgage loans; and (b) discouraged prospective applicants living in other areas from applying to Townstone for mortgage loans for properties in African-American neighborhoods in the Chicago MSA.

---

[1] For purposes of this Complaint, "mortgage loans" refers to all loans that Townstone was required to report under HMDA, 12 U.S.C. §§ 2801–2810, and "mortgage lending" refers to providing those loans.

4

15. Townstone acted to meet the credit needs of majority-white neighborhoods in the Chicago MSA while avoiding the credit needs of majority-African-American neighborhoods, thereby discouraging prospective applicants from applying to Townstone for mortgage loans in those neighborhoods.

16. A majority-African-American neighborhood or area is a census tract in which more than 50% of the residents are identified in the U.S. Census as either "Black or African American." A high-African-American neighborhood or area is a census tract in which more than 80% of the residents are identified in the U.S. Census as either "Black or African-American."

17. The Chicago MSA comprises 14 counties in three states: Cook County, DuPage County, Grundy County, Kendall County, McHenry County, Will County, DeKalb County, Kane County, and Lake County, Illinois; Jasper County, Lake County, Newton County, and Porter County, Indiana; and Kenosha County, Wisconsin.

18. As of 2010, the Chicago MSA included about 1.6 million African Americans.

19. As of 2010, the Chicago MSA's population was 9,461,105, of which 17% were African Americans. According to the U.S. Census Bureau, 30.1% of residents of the City of Chicago are African-American.

20. As of 2010, 18.7% of the Chicago MSA's 2,215 census tracts were majority-African-American and 13.8% were high-African-American.

21. During the relevant period, Townstone drew about 2,700 mortgage-loan applications from and originated about 1,800 mortgage loans in the Chicago MSA.

22. During the relevant period, Townstone drew over 90% of its mortgage-loan applications for properties within the Chicago MSA.

### Townstone Financial Show

23. Townstone's business model was to market and draw mortgage-loan applications primarily through radio advertising.

24. Throughout the relevant period, Townstone marketed through "The Townstone Financial Show," its own radio show and podcast. Since at least 2014, the Townstone Financial Show has been directly affiliated with Townstone's lending business. In 2014, the show was hosted by Townstone's co-owner and president. Beginning in about January 2015, the Townstone Financial Show was co-hosted by Townstone's CEO and now sole owner, its vice-president, who was also a loan officer, and another senior loan officer. Townstone generated up to 90% of its mortgage-loan applications from radio advertising, including through this show.

25. During the relevant period, the Townstone Financial Show was distributed in two media: a weekly radio show on AM radio that reached the entire Chicago MSA and a weekly podcast available exclusively online. During the relevant period, all Townstone Financial Show radio broadcasts and podcasts were available on the Townstone website. Both the radio show and podcast were streamed on Facebook Live and then advertised on Facebook, Twitter, and LinkedIn.

26. During the relevant period, Townstone's website and the Townstone Financial Show described the hosts as "Chicago real-estate experts."

27. During the relevant period, the hosts started the Townstone Financial Show podcasts by stating Townstone's licensing information, including that Townstone is a licensed mortgage broker/banker, NMLS number 136639, Illinois residential-mortgage licensee number 6629.

28. During the relevant period, the Townstone Financial Show radio broadcasts included an introductory statement such as: "This show is brought to you by Townstone Financial, the home-loan expert since 2002. Townstone Financial is an Indiana, Michigan, Wisconsin, Florida, Illinois mortgage licensee 6629, NMLS 136639. Remember no one values your mortgage business more than Townstone Financial."

29. The Townstone Financial Show is an infomercial that also includes advertisements for Townstone during commercial breaks. During the relevant period, the hosts discussed mortgage-related issues and took questions from prospective applicants. The hosts regularly referred to their work at Townstone and promoted the benefits that potential applicants might expect from applying for mortgage loans from Townstone.

30. During the relevant period, the co-hosts of the Townstone Financial Show made a number of statements on the show, across multiple episodes, that would discourage African-American prospective applicants from applying to Townstone for

7

mortgage loans, would discourage prospective applicants living in African-American neighborhoods from applying to Townstone for mortgage loans, and would discourage prospective applicants living in other areas from applying to Townstone for mortgage loans for properties in African-American neighborhoods.

31.     For example, in a January 2017 episode of the Townstone Financial Show, during which Townstone marketed its services, the hosts discussed a now-replaced grocery store in downtown Chicago that was part of the Jewel-Osco grocery-store chain. Townstone's CEO described "[having] to go to the Jewel on Division. . . . We used to call it Jungle Jewel. There were people from all over the world going into that Jewel. It was packed. It was a scary place."

32.     Referring to a neighborhood grocery store with "people from all over the world" as a "jungle"—a word that may be used or understood to be a derogatory reference associated with African Americans, Black people, and foreigners—and saying that the grocery store was "scary" would discourage African-American prospective applicants from applying for mortgage loans from Townstone; would discourage prospective applicants living in African-American neighborhoods from applying to Townstone for mortgage loans; and would discourage prospective applicants living in other areas from applying to Townstone for mortgage loans for properties in African-American neighborhoods.

33.     In a June 2016 episode of the Townstone Financial Show, before discussing the mortgage-lending services that Townstone could provide to police

officers and others, Townstone's CEO stated that the South Side of Chicago between Friday and Monday is "hoodlum weekend" and that the police are "the only ones between that turning into a real war zone and keeping it where it's kind of at." Chicago's South Side refers to the southern neighborhoods in the City of Chicago and is majority-African-American, with about 489,000 African Americans currently living there.

34. A mortgage lender and self-described real-estate expert referring to Chicago's South Side as "hoodlum weekend" would discourage prospective applicants living in the South Side from applying to Townstone for mortgage loans and would discourage prospective applicants living in other areas from applying to Townstone for mortgage loans for properties in this particular African-American community because the comments indicate that Townstone's CEO, speaking during an official Townstone marketing program, believes that the area's defining characteristic is that it is dangerous and full of criminals. Moreover, because the statement is disparaging toward a majority-African-American area, African-American prospective applicants throughout the Chicago MSA would also be discouraged from applying for mortgage loans from Townstone.

35. In a November 11, 2017 episode of the Townstone Financial Show, during which Townstone marketed its services, Townstone's senior loan officer discussed a recent skydiving experience and the ensuing "rush" from the jump; Townstone's vice-president responded that he thought skydiving was crazy and

9

suggested that "walking through the South Side at 3AM [would] get the same rush."

36. Referring to a majority-African-American neighborhood—Chicago's South Side—as a place where simply walking through it would provide a "rush" would discourage, on the basis of race, a prospective applicant living in or applying for a mortgage loan in that area from applying to Townstone because self-described real-estate experts are portraying the area as defined by its danger. And because the statement is disparaging toward a majority-African-American area, African-American prospective applicants would also be discouraged from applying for mortgage loans from Townstone.

37. In January 2014, while wrapping up a radio broadcast of the Townstone Financial Show, during which Townstone marketed its services, Townstone's president stated, "it's a great time to buy, it's a great time to rent, it's a great time to sell." He and that episode's co-hosts, a local realtor and a bankruptcy attorney, then gave advice on how to get a home ready for sale, which included "change the light fixtures," "paint it from top to bottom," and "take down the Confederate flag."

38. Joking about a symbol of racial animus or implying that the Townstone Financial Show's hosts and listeners might display such symbols in their homes would discourage African-American prospective applicants from applying for mortgage loans with Townstone; would discourage prospective applicants living in African-American neighborhoods from applying to Townstone for mortgage loans; and would discourage prospective applicants living in other areas from applying to Townstone

10

for mortgage loans for properties in African-American neighborhoods.

39. During another radio broadcast in January 2014, during which Townstone marketed its services, a caller from Markham, Illinois, asked how he and his wife could improve their credit scores. Markham is a city in Cook County, Illinois, and its population is 80.3% Black or African-American, according to the U.S. Census Bureau. Townstone's president responded that the caller's wife is "a woman and she probably doesn't have good credit because she's a woman," and that "[you've] got to keep those women in line over there in Markham." After further discussing the couple's credit concerns, he noted that "it's crazy in Markham on weekends" and that "I know, I've been to Markham." "You drive very fast through Markham," he continued, "and you don't look at anybody or lock on anybody's eyes in Markham . . . . You look at your dashboard, you don't lock on anybody." Townstone's president closed the segment by telling the caller to "stop spending freaking money [on his wife] and tell her to get a better job."

40. Disparaging a majority-African-American city as "crazy," a place to be driven through quickly, and an area where people should avoid eye contact, would discourage African-American prospective applicants from applying to Townstone for mortgage loans; would discourage prospective applicants living in African-American neighborhoods from applying to Townstone for mortgage loans; and would discourage prospective applicants living in other areas from applying to Townstone for mortgage loans for properties in African-American neighborhoods.

11

## Targeted Marketing

41. Even though African Americans made up 30% of the population of the City of Chicago, Townstone made no effort to market directly to African-Americans during the relevant period.

42. Townstone has not specifically targeted any marketing toward African-Americans in the Chicago MSA.

43. Townstone employed 17 loan officers during the relevant period. Townstone did not employ an African-American loan officer during the relevant period, even though it was aware that hiring a loan officer from a particular racial or ethnic group could increase the number of applications from members of that racial or ethnic group.

## Applications from African-American Neighborhoods

44. At least during the relevant period, Townstone's statements, acts, and practices directed at prospective applicants, including statements made on the Townstone Financial Show, discouraged prospective applicants living in or seeking credit to purchase properties in majority-African-American neighborhoods from applying for credit from Townstone in the Chicago MSA.

45. Townstone drew few applications from African-American applicants throughout the Chicago MSA during the relevant period. From 2014 through 2017, Townstone drew about 2,700 applications, of which only 37 (1.4%) came from African-Americans in the Chicago MSA. During the same period, other mortgage

lenders in the Chicago MSA drew 1,217,223 applications, of which 119,370 (9.8%) came from African-American applicants.

46. Similarly, Townstone drew almost no applications from prospective applicants applying for mortgage loans for properties in African-American neighborhoods. During the relevant period, Townstone drew an average of five or six applications each year (0.8%, 0.8%, 0.7%, and 0.9% of all Townstone applications) for properties in high-African-American neighborhoods, even though such neighborhoods made up 13.8% of the Chicago MSA's census tracts. Of Townstone's five or six applications each year for properties in high-African-American neighborhoods (more than 80% African-American), more than half each year were from non-Hispanic white applicants.

47. Similarly, only 2.3%, 1.4%, 1.4%, and 2.2% of Townstone's applications for the years 2014 through 2017, respectively, came from prospective applicants applying for mortgage loans for properties in majority-African-American areas, even though 18.7% of the Chicago MSA's census tracts were majority-African-American. *See* Exhibit A.

48. Statistical analyses of Townstone's mortgage-loan applications in the Chicago MSA, as compared to its peer lenders during the relevant period, show disparities between Townstone and its peers in drawing mortgage-loan applications for properties in African-American neighborhoods. These disparities are statistically

13

significant[2] and demonstrate that there were applicants seeking mortgage loans for properties in African-American neighborhoods in the Chicago MSA from Townstone's peers in much higher proportions than from Townstone. These disparities further show that Townstone had no legitimate, non-discriminatory reason to draw relatively few applications for mortgage loans for properties in these African-American areas.

49. Specifically, Townstone drew a significantly smaller proportion of mortgage-loan applications for properties in majority-African-American neighborhoods than its peer lenders operating in the Chicago MSA. While Townstone drew 2.3%, 1.4%, 1.4%, and 1.3% of its applications for properties in majority-African-American neighborhoods from 2014 through 2017, respectively, Townstone's peers drew 8.2%, 7.6%, 7.7%, and 8.1%—3.6, 5.4, 5.5, and 6.2 times that of Townstone.

50. Similarly, Townstone drew a significantly smaller proportion of mortgage-loan applications for properties in high-African-American neighborhoods than its peers operating in the Chicago MSA. While Townstone drew only 0.8%, 0.8%, 0.7%, and 0.9% of its applications for mortgage loans for properties in high-African-American census tracts from 2014 through 2017, respectively, other similar

---

[2] Statistical significance measures the probability that an observed outcome could have occurred by chance. As used in this Complaint, an outcome is statistically significant if the probability that it could have occurred by chance is less than 5%.

lenders drew 5.3%, 4.9%, 5.1%, and 5.5% of their applications from such census tracts—6.3, 6.2, 7.7 and 6.1 times that of Townstone.

51. The totality of Townstone's statements, acts, and practices described herein constitute redlining of African-American neighborhoods in the Chicago MSA and discouragement on the basis of race. Townstone's statements, acts, and practices directed at prospective applicants are intended to discourage prospective applicants on the basis of their race or the racial composition of their neighborhoods, or have the effect of discouraging on such bases, African Americans and prospective applicants seeking credit to purchase homes in majority-African-American neighborhoods in the Chicago MSA from obtaining mortgage loans.

## COUNT 1: ECOA VIOLATIONS

52. The Bureau incorporates the allegations in Paragraphs 1–51 here by reference.

53. Townstone's statements, acts, and practices directed at prospective applicants discouraged, on the basis of race, prospective applicants from applying for credit and constituted unlawful redlining, in violation of Regulation B and ECOA. 12 C.F.R. § 1002.4(b); 15 U.S.C. § 1691(a)(1).

54. Townstone discriminated against prospective applicants and applicants with respect to credit transactions on the basis of race, in violation of ECOA. 15 U.S.C. § 1691(a)(1).

55. Townstone's practices constitute a pattern or practice of discrimination

15

and discouragement, in violation of ECOA. 15 U.S.C. § 1691(a)(1).

## COUNT 2: CFPA VIOLATIONS

56. The Bureau incorporates the allegations of Paragraphs 1–51 here by reference.

57. Section 1036(a)(1)(A) of the CFPA prohibits a covered person from offering or providing to a consumer any financial product or service not in conformity with "Federal consumer financial law" or otherwise committing any act or omission in violation of a "Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

58. Townstone's ECOA violations, described above in Count 1, constitute violations of § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## DEMAND FOR RELIEF

WHEREFORE, the Bureau requests that the Court enter an ORDER that:

(1) declares that the statements, acts, and practices of Townstone constitute violations of ECOA, 15 U.S.C. §§ 1691–1691f;

(2) requires Townstone, under 15 U.S.C. § 1691c(a)(9) and 12 U.S.C. § 5565(a), as well as Townstone's agents, employees, successors, and all others in active concert or participation with Townstone, to:

    a. not discriminate in any aspect of its mortgage-lending business on the basis of race or any other basis prohibited by ECOA, 15 U.S.C. § 1691(a);

    b. take such affirmative steps as may be necessary to restore, as nearly as

practicable, the victims of Townstone's unlawful conduct to the position they would have been in but for the discriminatory conduct; and

c. take such affirmative steps as may be necessary to prevent the recurrence of any such discriminatory conduct; to eliminate, to the extent practicable, the effect of Townstone's unlawful practices; and to implement policies and procedures to ensure that all applicants and prospective applicants have an equal opportunity to seek and obtain loans on a non-discriminatory basis and with non-discriminatory terms and conditions;

(3) awards damages, restitution, equitable, and other monetary relief, under 15 U.S.C. § 1691c(a)(9) and 12 U.S.C. § 5565;

(4) assesses a civil money penalty against Townstone in an amount authorized by 12 U.S.C. § 5565(c);

(5) awards the costs of bringing this action; and

(6) awards such additional relief as the interests of justice may require.

//
//
//
//
//
//
//

<200b>
<200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b>
<200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b><200b>

Respectfully submitted,

THOMAS G. WARD
Enforcement Director
CARA PETERSEN
Principal Deputy Enforcement Director
JEFFREY PAUL EHRLICH
Deputy Enforcement Director
KARA K. MILLER
Assistant Litigation Deputy

/s/ Michael G. Salemi
MICHAEL G. SALEMI, IL ARDC 6279741
Email: michael.salemi@cfpb.gov
VINCENT HERMAN DC Bar #974596
Email: vincent.herman@cfpb.gov
BARRY REIFERSON NY Reg. #4343893
Email: barry.reiferson@cfpb.gov

230 S. Dearborn Street
Suite 1590
Chicago, IL 60604

    and

1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9599

Attorneys for the Bureau of Consumer Financial Protection