IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bureau of Consumer Financial Protection, | ) ) ) | Case No. 1:20-cv-04176 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Judge Franklin U. Valderrama Magistrate Judge Gabriel A. Fuentes |
| Townstone Financial, Inc., et al., | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff Bureau of Consumer Financial Protection (Bureau) respectfully requests that the Court compel Defendant Sturner's production of documents responsive to Requests 1, 2, and 3 of Plaintiff's First Requests for Production of Documents and Electronically Stored Information to Barry Sturner (Requests) within 14 days of entry of an order.[1] As set forth below, the Requests seek communications closely related to the illegal discouragement of credit applicants via Townstone's radio shows and podcasts, general business practices, and its hiring practices. Defendant Sturner has refused to produce potentially-responsive documents because he deems them 'personal' or 'non-business.' But this self-serving characterization has no legal import and the requested documents are highly relevant and proportional to the needs of this case given Defendant Sturner's own sworn testimony about how he conducted the Townstone radio show and hired company employees.

---

[1] The parties have agreed upon a briefing schedule for Plaintiff's Motion to Compel, as well as a Motion to Compel from Defendants to be filed contemporaneously.

## BACKGROUND

The Bureau alleges that Townstone Financial, Inc. (Townstone), which was and is involved in mortgage lending in and around Chicago, violated the Equal Credit Opportunity Act (ECOA)[2] and its implementing regulation, Regulation B,[3] and the Consumer Financial Protection Act of 2010 (CFPA),[4] by engaging in conduct that would unlawfully discourage prospective applicants, on the basis of race, from applying for credit.[5] The Bureau seeks a wide range of legal and equitable relief under both ECOA and the CFPA, including all such relief as "the interests of justice may require."[6]

On the discouragement counts, the Bureau alleges that Townstone discouraged prospective applicants from applying for credit on the basis of race through discriminatory, race-based statements made during the company's podcasts and radio shows from at least 2014 through 2017, including through statements made by Sturner himself, and by its general business practices, including its hiring and marketing practices.[7]

Before filing its complaint, the Bureau conducted an under-oath investigative hearing of Defendant Sturner.[8] In that hearing, Sturner admitted that 'experts' who previously appeared on the radio show are personal friends and that he received feedback about the Townstone podcast from friends and family.[9] Sturner also admitted that he hired employees primarily via referrals,

---

[2] 15 U.S.C. §§ 1691–1691f.
[3] 12 C.F.R. §§ 1002.1–16 (2022).
[4] 12 U.S.C. § 5536(a)(1)(A).
[5] Am. Compl. ¶ 5.
[6] Am. Compl. ¶¶ 17–18.
[7] Am. Compl. ¶¶ 22–52.
[8] *See* July 16, 2018 Sturner Investigational Hearing Transcript (Sturner Tr.), cited sections of which are attached and incorporated hereto as Exhibit A.
[9] Sturner Tr., Ex. A, at 30:10–12; 266:3–6 ("[W]e found out that when people are listening to podcasts, they told us, friends, family, that ten [minutes] was enough of us.")

although he claimed that "most" of the referrals were from business contacts.[10] As to some of the statements made on the Townstone radio show and later quoted in the Bureau's amended complaint, Sturner claimed that his reference to a weekend on the South Side of Chicago as a "hoodlum weekend" was merely reiterating what personal friends and acquaintances had told him about certain neighborhoods: "Listen to what I'm saying. I'm talking about what they're saying. They're calling it hoodlum weekend. I'm talking about the police officers that I am friends with and that's what they were saying."[11] Finally, Sturner emphasized the importance of loan officers' leveraging their personal networks to gain referrals and his emphasis of the same to his employees: "No different than me saying to [a Townstone employee], your family over here, you got your whole family, why aren't they giving us loans. Friends and family is what we talk about all the time. It should be the basis of your business. Once you get your friends and family, it should extend outward."[12]

As part of discovery in this case, the Bureau sought documents relating to the communications described in Sturner's testimony. On May 6, 2022, the Bureau requested that Sturner produce, among other things, the following:

(1) All Documents, including all emails, chats, and text messages, referencing any ethnic, gender, religious, racial, or group-based slur or making any generalization, differentiation, or stereotyping, or referring to any generalization, differentiation, or stereotyping, based on race, color, religion, national origin, sex, marital status, or age.

(2) All Documents referring to Mexicans or Canadians.

---

[10] Sturner Tr., Ex. A, at 56:17–19 ("Most of the loan officers that we would get in previous years would come from a referral from somebody that we know."); 57:25–58:9.

[11] Sturner Tr., Ex. A, 295:11–25 ("Q. So the comment sounded broader than simply referring to that incident. A. I'm speaking about the police officers that I play hockey with. That's what I'm talking about right there. Q. You said Friday through Saturday it's hoodlum weekend. A. Listen to what I'm saying. I'm talking about what they're saying. They're calling it hoodlum weekend. I'm talking about the police officers that I am friends with and that's what they were saying. Q. Okay. And what does that mean? A. Ask them. I was repeating what they said to me.").

[12] Sturner Tr., Ex. A, at 67:4–11.

> (3) All Communications, including emails, chats, social-media posts, and text messages, referring to characteristics of any geographic areas or neighborhoods.[13]

On June 10, 2022, Sturner served his Initial Responses and Objections to Plaintiff CFPB's First Requests for Production of Documents and Electronically Stored Information (the Initial Responses), making the following general objection:

> Defendant objects to the Requests for Production to the extent that they seek personal and confidential non-business documents as such information is neither relevant to any party's claim or defense, nor proportional to the needs of the case.[14]

Sturner repeated similar objections in his specific responses to each of Plaintiff's Requests.[15] Sturner agreed to provide only responsive "business" or "business-related" documents for all three requests.[16] After several discussions with the Bureau regarding these Requests, Sturner clarified his objections in an October 2, 2022 letter:

> Mr. Sturner will search for business-related texts and emails that are responsive to your requests. However, Mr. Sturner will not search his devices for personal text messages unrelated to the CFPB's case. First, Mr. Sturner's personal text messages are irrelevant to CFPB's claims, because communications with friends and family can have no bearing on whether Townstone's public statements on a radio show 'would discourage' 'prospective applicants' from seeking credit.[17]

Sturner also implied that such a request is overbroad and not proportional.[18] Recently, Sturner has repeated the refusal to search for and produce "responsive texts with Barry's friends, family, or non-business associates."[19] Despite repeated discussions regarding this issue, the parties have

---

[13] Plaintiff's Requests 1–3, attached and incorporated hereto as Ex. B.
[14] Defendant Sturner's Initial Responses, attached and incorporated hereto as Ex. C.
[15] *Id*. at Req. 1 ("Defendant objects to this request to the extent it seeks personal and confidential non-business documents, as such documents have no bearing on any party's claim or defense."); Reqs. 2 & 3 ("Defendant objects to this request to the extent it seeks personal and confidential non-business documents that are neither relevant to any party's claim or defense, nor proportional to the needs of the case.").
[16] *Id*.
[17] Oct. 3, 2022 Letter from Defendants to Plaintiff, cited sections of which are attached and incorporated hereto as Exhibit D (non-relevant portions redacted).
[18] Oct. 3, 2022 Letter, Ex. D.
[19] Nov. 3, 2022 Letter from Defendants to Plaintiff, cited sections of which are attached and incorporated

been unable to resolve their dispute regarding Requests 1–3.

## ARGUMENT

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[20] District courts have broad discretion in supervising discovery and ruling on discovery motions.[21] The court "may grant or deny the motion [to compel] in whole or in part, and . . . may fashion a ruling appropriate for the circumstances of the case."[22] As this Court has recognized, relevance is broad.[23] And "[c]onsistent[] with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."[24] Courts have also required the search for and production of relevant documents, even if those communications were made on personal computers or emails.[25] Here, the Bureau's Requests 1–3 are highly relevant and proportional to the needs of this case.

### A. Sturner's Communications Relate to Townstone's Radio Show and General Business Practices.

The Bureau seeks Sturner's communications that specifically discuss, disparage, or generalize particular groups or communities. These communications are relevant to the Bureau's

---

hereto as Exhibit E (non-relevant portions redacted) ("We are not searching for responsive texts with Barry's friends, family, or non-business associates.").

[20] Fed. R. Civ. P. 26(b)(1).
[21] *McCarthy v. Option One Mortg. Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004).
[22] *Gile v. United Airlines*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)).
[23] *Coleman v. State of Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3–4 (N.D. Ill. Sept. 25, 2020)).
[24] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.").
[25] *Sunderland v. Suffolk Cnty.*, No. 13-4838, 2016 WL 3264169 at *3 (E.D.N.Y. June 14, 2016) (ordering production of documents where the plaintiff sought communications "concerning gender dysphoria" or "relating to gender identity or sexual preference," including documents on individual defendants' personal computers and emails); *ID Ventures, LLC v. Chubb Custom Ins. Co.*, No. CV 17-14182, 2018 WL 8807125, at *2 (E.D. Mich. Oct. 12, 2018) (ordering a search for responsive documents by defendants' agents, including in their personal email accounts).

claims and appropriate for discovery whether or not Sturner considers them to be "personal."

First, Sturner is a named party to this litigation, and he is a co-host of Townstone's radio show, through which Townstone broadcast statements alleged to have discouraged prospective African American applicants for credit.[26] Despite his current assertion to the contrary, Sturner previously testified that his communications with family and friends inform and influence the show generally, and informed the basis of specific statements he made on the show, including Sturner's reference to a "hoodlum weekend" on the South Side of Chicago, alleged in the amended complaint to be discouraging to prospective African American applicants.[27] In addition to relating directly to the Bureau's allegations, Sturner's communications are also relevant as they may go to bias or motivation,[28] may refute any potential defense that Sturner was merely reporting statements made by others, or may lead to the identification of additional witnesses with relevant information to this suit.

Second, Sturner's communications are also relevant to Townstone's general business practices which discouraged potential African American applicants. Sturner relied on his personal network as a source of potential loan applicants as well as a source of potential employees. Thus, communications discussing, disparaging, or generalizing particular groups or communities are relevant to the type of loan applicant or employee Sturner sought out. For example, statements regarding African Americans made by Sturner to a personal friend may influence whether that friend refers any African American prospective borrowers or employees to Townstone.

Sturner claims that his "personal" communications are not relevant because the

---

[26] Am. Compl. ¶¶ 13, 22–41.
[27] Am. Compl. ¶ 35.
[28] *Sunderland*, 2016 WL 3264169 at *3 ("Moreover, to the extent such documents exist on the Individual Defendants' personal computers, they may contain information going to bias or motivation.").

statements "have no bearing on whether Townstone's public statements on a radio show 'would discourage' 'prospective applicants' from seeking credit."[29] But Sturner himself put his statements with friends and acquaintances at issue when he relied on those conversations as somehow justifying his public comments. Similarly, Sturner testified that his business relies on personal contacts for acquiring loan applicants and on referrals for hiring decisions as Townstone's chief executive. These practices are directly relevant to the illegal discouragement alleged in the amended complaint.

Further, arbitrarily calling some communications "personal" does not shield them from discovery: "[s]imply attaching these convenient, self-serving labels to these accounts does not make them so easily categorized. Calling the [] account a 'personal account' does not make it so. As Abraham Lincoln famously noted, calling a tail a leg does not make a tail a leg."[30] Like in *Sunderland v. Suffolk County*,[31] where a court in a civil rights action brought by a transgender prisoner ordered the production of defendants' personal-capacity communications stored on personal devices which "discuss issues related to gender dysphoria" to support that plaintiff's discrimination claim, the Bureau seeks certain types of communications highly relevant to this matter. Sturner's communications are relevant and appropriate for discovery, and Sturner's attempt to delineate a difference in types of communications where none exists is unavailing.

### B. Plaintiff's Limited Requests are Proportional to the Needs of the Case.

Courts have considered several factors when determining proportionality, including "the

---

[29] Oct. 3, 2022 Letter, Ex. D.
[30] *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 886–87 (N.D. Ill. 2021) (finding that relevant and responsive emails should have been produced despite counsel's categorization of the email account on which they were located as "personal").
[31] *Sunderland*, 2016 WL 3264169 at *2 ("The Court concludes that Plaintiff has the right to pursue emails and other correspondence the Individual Defendants may have created/saved on their personal computers or sent from their personal email accounts which reference Plaintiff or discuss issues related to gender dysphoria.").

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit."[32] Here, the Bureau seeks a limited search of Sturner's communications for comments specifically regarding neighborhoods and particular groups of people. Similar to the categorical requests in *Sunderland*, the Bureau's Requests are not unduly intrusive or burdensome.[33]

The proportionality factors bear this out and weigh heavily in favor of compelling discovery here. The Bureau's claims address unlawful discrimination, an important issue prohibited nationwide by the very statute that the Bureau seeks to enforce. Sturner is the only individual with access to all of his personal communications. And the cost of a search for responsive emails and texts is relatively low; the Bureau does not seek the production of every communication Sturner has ever had or the production of Sturner's phone or computer for forensic inspection. These specific Requests are instead minimally intrusive. Further, the sought documents relate directly to core allegations of the amended complaint, including the bases for discouraging statements made on Townstone's radio show and other methods potentially used to discourage prospective African American applicants. Applying these factors, the documents being sought are proportional to the needs of this matter, neither unduly intrusive nor burdensome, and Defendant Sturner should produce the responsive documents.

---

[32] Fed. R. Civ. P. 26(b)(1). *See also Doe v. Loyola University Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020); *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2020 WL 7056039, at *7 (E.D. Mich. Dec. 2, 2020), *citing State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. June 12, 2017).
[33] *Sunderland*, 2016 WL 3264169 at *3 (ordering production of communications "concerning gender dysphoria" or "relating to gender identity or sexual preference").

**CONCLUSION**

For the foregoing reasons, the Bureau respectfully requests that the Court grant the Bureau's motion and compel Defendant Sturner to produce all records responsive to the Bureau's Requests 1, 2, and 3 within 14 days of entry of the Court's order.

Dated: November 14, 2022  Respectfully submitted,

*/s/ Gregory W. Jones*
Gregory W. Jones (IL ARDC #6313157)
Tel.: (202) 573-1372
Email: *gregory.jones@cfpb.gov*
Jacob A. Schunk (IA AT001908)
Email: *jacob.schunk@cfpb.gov*
Telephone: (202) 718-0394
Mary Olson (IL ARDC #6297334)
Email: *mary.olson@cfpb.gov*

230 S. Dearborn St., Suite 1590
Chicago, IL 60604

and

1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*

**Rule 37.2 Statement:**

On October 21, 2022, at 2:30pm, the Parties met and conferred via video conference to discuss, among other things, Defendants' Motion to Compel. Attending on behalf of Plaintiff were Jacob Schunk and Gregory Jones. On behalf of Defendants were Steven Simpson, Jessica Thompson, Oliver Dunford, Sean Burke, Ray Biederman, and John Kerkhoff. Defendants oppose the Motion.

*/s/ Gregory W. Jones*
Gregory W. Jones

## CERTIFICATE OF SERVICE

The undersigned certifies that, on November 14, 2022, I electronically filed the foregoing document with the Clerk of Court via the CM/ECF system, which will cause a copy to be served on counsel of record.

*/s/ Gregory W. Jones*
Gregory W. Jones
