IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bureau of Consumer Financial Protection, | ) )  Case No. 1:20-cv-04176 |
| Plaintiff, | ) ) ) |
| v. | ) Judge Franklin U. Valderrama ) Magistrate Judge Gabriel A. Fuentes ) |
| Townstone Financial, Inc., et al., | ) ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

Defendants'[1] insistence that the Bureau of Consumer Financial Protection (Bureau) be subject to a burdensome fishing expedition into voluminous collections of privileged internal Bureau documents and emails for materials pertaining to alleged political and social views is unwarranted and contrary to both the Federal Rules and well-established legal principles.

## BACKGROUND

The Bureau alleges that Townstone Financial, Inc. (Townstone) unlawfully discouraged prospective applicants for credit on the basis of race through both its general business practices and discriminatory, race-based statements in podcasts and radio shows.[2] More specifically, the Bureau alleges that Townstone's conduct and statements violated Regulation B, which prohibits creditors from "mak[ing] any oral or written statement, in advertising or otherwise, to applicants

---

[1] Defendants jointly served discovery and jointly filed the relevant filings. The Bureau only asserted Regulation B claims against Townstone, not Mr. Sturner. For ease, the Bureau refers throughout to Defendants jointly unless context requires otherwise.

[2] Am. Compl. ¶¶ 22–52, ECF No. 27.

or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application."[3]

Defendants filed a motion to dismiss on First Amendment and other grounds,[4] which remains pending while discovery continues. Defendants served 45 requests for the production of documents,[5] including Requests 41 and 42, which are at issue here. In Requests 41 and 42, Defendants sought (1) any documents concerning the "political leaning, political viewpoints, or social commentary of Townstone and/or Townstone's staff" (Request 41); and (2) any documents concerning the "political leaning or viewpoints of the AM-radio stations in the Chicago M[etropolitical] S[tatistical] A[rea]" (Request 42).[6] The Bureau lodged privilege and other objections to these two requests and declined to search for documents in internal Bureau records because, even if such documents did exist, they were not relevant and therefore were beyond the bounds of permissible discovery.[7]

As part of its responses to Defendants' other document requests, the Bureau has already produced or logged all documents relating to Townstone that the Bureau exchanged with third parties or that were otherwise released outside of the Bureau. Thus, the only potentially responsive documents to Requests 41 and 42 that have not been produced or logged are internal Bureau documents (to the extent that responsive documents even exist).

Both parties filed motions to compel. In support of their motion to compel production of internal Bureau documents responsive to Requests 41 and 42, Defendants submitted a declaration from Defendant Barry Sturner, Townstone's CEO, stating that, in addition to public

---

[3] 12 C.F.R. § 1002.4(b).
[4] Defs.' Combined Mot. to Dismiss Pl.'s Compl., ECF No. 31.
[5] Mot. to Compel, Ex. C, at 8-9, ECF No. 89-3.
[6] *Id.*
[7] Mot. to Compel, Ex. D, at 9-10, ECF No. 89-4.

statements on radio shows and podcasts, Mr. Sturner is "outspoken" on both the shows and in "daily life" about certain political issues.[8] He claims that he has "strong views" on matters of public concern and that he "frequently make[s]" his opinions known and is a "loud critic of the Consumer Financial Protection Bureau."[9]

Magistrate Judge Fuentes denied Defendants' motion to compel responses to Requests 41 and 42. The Order characterized Requests 41 and 42 as seeking documents concerning Bureau "staff's political opinions or viewpoints, and relating to the staff's assessment of or comments upon the political leanings of various Chicago AM radio stations."[10] Judge Fuentes held that the requests were not permissible because the requests were "simply irrelevant" and because it appeared that Defendants "want to argue that CFPB itself harbors some kind of content-based or other bias against Sturner or Townstone."[11] Judge Fuentes did not conduct a proportionality analysis, finding instead that Defendants failed to state an "adequate theory of discovery relevancy through their suggestion that 'the Bureau filed this lawsuit because it disagreed with the content of Defendant Sturner's speech or his general political view.'"[12]

After Defendants filed their Objection, Judge Fuentes noted through a minute entry that Defendants' Objection was "well-taken" as to Request No. 41 "on the ground that the Request No. 41 is directed at documents, if any exist, concerning the CFPB's consideration of defendants' political leanings, and not at documents concerning the leanings of CFPB staff members themselves."[13] The minute entry did not amend the Order or address Request 42.

---

[8] Mot. to Compel, Ex. G, at ¶ 6, ECF No. 89-4.
[9] *Id.* at ¶¶ 6, 11.
[10] Order 15, Dec. 12, 2022, ECF No. 104.
[11] Order 15.
[12] Order 15.
[13] Minute Entry, Jan. 3, 2023, ECF No. 107.

# ARGUMENT

"Magistrate and district courts enjoy extremely broad discretion in controlling discovery,"[14] which is limited to matters that are "relevant to the claim or defense of any party."[15] A district court can overturn a magistrate judge's decision limiting discovery if the decision is either "clearly erroneous" or "contrary to law."[16] For a decision to be clearly erroneous or contrary to law, this Court must be "left with the definite and firm conviction that a mistake has been made."[17]

**I.  Even if they exist, internal Bureau emails and documents concerning Defendants' alleged social or political views are not relevant.**

The internal communications and documents sought by Defendants, whether concerning the political leanings of CFPB staff members or concerning Townstone's political or social views or those of certain radio stations, are immaterial. None of the sought communications are relevant.

**A. The sought communications are not relevant under controlling Seventh Circuit precedent and relevant authority from other courts.**

Nothing about individual Bureau employees' views—whether their own political opinions or their opinions regarding Townstone's social or political views—changes whether Defendants' conduct was sufficiently discouraging to meet the regulatory threshold or whether the speech at issue is constitutionally protected.

The Seventh Circuit has recognized that "statutory interpretation and constitutional analysis . . . [do] not require the court to review the postulations of agency staff members."[18]

---

[14] *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).
[15] Fed. R. Civ. P. 26(b).
[16] Fed. R. Civ. P. 72(a).
[17] *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).
[18] *United States v. Farley*, 11 F.3d 1385, 1391 (7th Cir. 1993).

This is consistent with decisions from other courts, which have recognized that government-employee opinions "have no legal significance,"[19] "are simply not relevant,"[20] and "are not legally germane."[21] While the Bureau cited these decisions in its initial Opposition,[22] Defendants avoided addressing these decisions in their reply brief.[23] And now, even though the Order is wholly consistent with these decisions, Defendants relegate the decisions to a single-sentence footnote, where they dismiss the cases as inapplicable because "none of these cases involved parties seeking discovery to support a First Amendment defense."[24]

But the reasoning in those cases does apply given the similar issues and holdings. In *United States v. Farley*, for example, the Seventh Circuit agreed with the district court that a defendant was not entitled to discovery into individual-government-employee documents to determine whether a defendant's conduct fit into a regulatory definition and whether the regulation provided adequate notice to potentially affected individuals.[25] The Court held that internal documents containing staff-member "suppositions" are "definitely not relevant" to statutory interpretation and "reveal nothing about the adequacy of the public notice provided."[26] Similarly in *CFPB v. Navient*, the Court held that, as to all of a defendant's defenses to an agency enforcement action, internal agency documents were, with the exception of a small subset unique to that defendant's status as a contractor, not discoverable because "these types of communications have no legal significance" and "are simply not relevant to Defendants'

---

[19] *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 2088760, at *4 (M.D. Pa. May 4, 2018).
[20] *Id.*
[21] *Int'l Paper Co. v. Fed. Power Comm'n*, 438 F.2d 1349, 1358–59 (2d Cir. 1971).
[22] Bureau Opp'n 7-8.
[23] Defs.' Reply Supp. Mot. to Compel Disc. Resp's (Defs.' Reply), ECF No. 102.
[24] Defs.' Rule 72(a) Objection 12, n.5 (Objection), ECF No. 105.
[25] *Farley*, 11 F.3d at 1390.
[26] *Id.*

defenses."[27] And in *International Paper Company v. Federal Power Commission*, which involved a challenge to an agency's jurisdiction, the Court held that documents containing staff-member views were not discoverable because individual-employee views "are not legally germane."[28]

Likewise, the documents sought here are beyond the bounds of permissible discovery.

### B. Defendants improperly ignore Rule 26 and the controlling discovery standards by seeking documents not relevant to the Bureau's claims or any defenses.

Rule 26 and its contours guide discovery disputes.[29] Nevertheless, Defendants rely on a number of vague, abstract suppositions untethered to legal principles to support their position. For example, Defendants claim that the Bureau should search for the requested documents because such documents could somehow "illuminate the issues,"[30] or, as Defendants repeatedly claim without authority, because Defendants are "entitled to know"[31] whether such documents exist. But just as the Bureau could not prove its discouragement claim through the type of documents that Defendants seek or through testimony of its own employees, Defendants are not entitled to discovery into opinions of individual Bureau employees regarding Defendants' or particular radio stations' political views.

As one particularly egregious example, Defendants assert, without any cited authority, that they are "entitled to know why CFPB believes its statements are 'disparaging' or 'discouraging' when similar comments by others are not."[32] But the relevant question is not what certain Bureau employees might believe but instead whether Defendants' conduct and statements

---

[27] *Navient Corp.*, 2018 WL at *4.
[28] *Int'l Paper Co.*, 438 F.2d at 1358.
[29] Fed. R. Civ. P. 26.
[30] Objection 6.
[31] *See, e.g.*, Objection 4, 5, 6 (twice), 12 (twice), and 15.
[32] Objection 12.

would discourage Black people and those living in Black neighborhoods from applying for a mortgage loan. Moreover, while Defendants claim that public figures also commented about crime in Chicago,[33] Regulation B's prohibition of race-based discouragement applies only to creditors,[34] not politicians.

Defendants assert that, "CFPB is obviously going to present evidence supporting its interpretation of the statements and why it believes those statements disparage African Americans [and Defendants are] entitled to discovery concerning what that evidence is and what other evidence CFPB considered in concluding that Townstone violated Regulation B."[35] The Bureau agrees that Defendants are entitled—through appropriate discovery requests, expert disclosures, and the Bureau's initial disclosures—to discover what evidence the Bureau will use to support its claims. However, discovery is not advanced by a highly burdensome search for non-relevant, internal Bureau documents that will not (and could not) be used to support the claims or defenses.

### C. Internal Bureau emails and documents are not relevant to Defendants' First Amendment defenses.

Defendants' own motion-to-dismiss filings directly undermine their position that the requested documents are relevant to their First Amendment defenses. In those filings, Defendants claim that this action is constitutionally barred for four reasons: (1) Regulation B is impermissibly content-based because it applies only to a certain kind of speech (i.e., speech that discourages),[36] (2) Regulation B is "both vague and overbroad such that it should not be applied to Townstone or to any creditor,"[37] (3) the discouragement prohibition "impacts so much

---

[33] Objection 11, n.4.
[34] 12 C.F.R. § 1002.4.
[35] Objection 12.
[36] Mem. Law Supp. Mot. to Dismiss 14 (Mot. to Dismiss Mem.), ECF No. 32.
[37] Mot. to Dismiss Mem. 17.

protected speech that it should not be applied to anyone,"[38] and (4) the discouragement prohibition is so vague that it fails to give constitutionally required "fair notice of the specific conduct that the Bureau arbitrarily interprets to be forbidden."[39] In their Objection, as in all of their briefing on their motion to compel,[40] Defendants fail to articulate how internal Bureau emails could affect the analysis of these issues.

Although Defendants attempt through summary conclusions, inaccurate characterizations, and unsupported fragments to claim otherwise, the cases they cite also offer no help to their position. Indeed, *not a single case* cited by Defendants even involves the use of or reference to materials like those sought here—internal government documents or emails.

For example, Defendants incorrectly claim that two Supreme Court cases have "relied on precisely the sort of evidence Townstone now seeks."[41] However, the Court in those cases held only that Lanham Act provisions prohibiting "immoral or scandalous" or "disparag[ing]" trademarks were unconstitutional because the statutory language, on its face, permitted the government to "prevent[] speech expressing ideas that offend,"[42] or "allow[ed] registration of marks when their messages accord with, but not when their messages defy, society's sense of decency."[43] Contrary to Defendants' assertion, in neither case did the Court give any consideration whatsoever to internal government documents or government employee views on the characteristics or political views of the entities or individuals seeking the trademarks.

Defendants quote extensively from one of the decisions, *Iancu v. Brunetti*, noting that an examining attorney and an agency's review board both considered how the trademark applicant

---

[38] Mot. to Dismiss Mem. 20.
[39] *Id.* at 22.
[40] *Compare* Bureau Opp'n 8, *with* Defs' Reply.
[41] Objection 8.
[42] *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017).
[43] *Iancu v. Brunetti*, 139 S. Ct. 2294, 2300 (2019).

8

used the mark at issue, "FUCT," in connection with nihilistic and anti-social images before concluding that the mark was "extremely offensive."[44] Defendants then declare, erroneously, that the applicant's "views were relevant to the PTO in deciding his mark was offensive, and relevant to the Court in concluding that the PTO's decision constituted viewpoint discrimination." But what the Court actually held was that the law was unconstitutional on its face, not that the application of the law to that specific trademark was unconstitutional.[45] More to the point, the *Brunetti* decision contained no discussion about whether the reviewing attorney or board members had opinions on the applicant's personal views (and there was, apparently, no discovery on this).[46] The only contention was whether the at-issue mark, when viewed together with the applicant's other public expressions made in conjunction with the mark, met a certain statutory threshold. Accordingly, it was legitimate for the reviewing attorney and board to look at the applicant's other public expressions made in conjunction with the mark to do that assessment. But nothing about that type of assessment, based exclusively on the mark and the applicant's statements made in connection with the mark, indicates that individual employee opinions of the applicant's personal views were considered, relevant, subject to discovery, or even known.

Defendants also erroneously rely on *City of Austin v. Reagan National Advertising of Austin, LLC*, a case involving restrictions on electronic billboards in certain settings, to support their claims of relevancy.[47] The *City of Austin* court held only that, if an otherwise content-neutral law was enacted for "an impermissible purpose," then the law should be treated as

---

[44] Objection 13 (quoting *Brunetti*, 139 S. Ct. at 2300).
[45] *Brunetti*, 139 S. Ct. at 2302.
[46] *Id.* at 2298-2302.
[47] Objection 9 (citing *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464).

content-based and ruled unconstitutional.[48] That reasoning has no application here, where Defendants are not arguing that Regulation B was enacted for an impermissible purpose.

Defendants' argument that *McGuire v. Reilly*[49] supports their position is also misplaced. *McGuire* is a 2004 First Circuit decision involving the legislative creation of a speech-free buffer zone around abortion clinics. In that case, the First Circuit discussed a particular type of First Amendment challenge based "on the idea that [a] law itself is neutral and constitutional in all fact situations, but that it has been enforced selectively in a viewpoint discriminatory way."[50] Defendants selectively excerpt a portion of the holding where the court indicates that this type of "challenge is dependent on the factual evidence provided as to how the statutory scheme has in fact operated vis-à-vis the plaintiffs,"[51] claiming that the *McGuire* court's reference to factual evidence is relevant to Defendants' discovery requests here. But Defendants ignore the next sentence of that opinion, which explained that "[t]he exact claim is that in practice the government has engaged in viewpoint discrimination by failing to enforce the statute against persons who violate the statute by expressing pro-abortion/pro-choice views . . . while enforcing the statutory prohibitions against those in the same position who express anti-abortion/pro-life views."[52] Not only have Defendants never raised a *McGuire*-type defense in this case, but the *McGuire* decision, like every other decision cited by Defendants, also did not consider or comment upon the discoverability of internal government emails or documents.

Defendants do not cite a single case involving a defense based on assertions like those they make here. They do not argue that they are being treated differently than any identifiable

---

[48] *City of* Austin, 142 S. Ct. at 1475.
[49] Objection 9 (citing *McGuire v. Reilly*, 386 F.3d 45 (1st Cir. 2004)).
[50] *McGuire*, 386 F.3d at 61.
[51] Objection 9 (quoting *McGuire*, 386 F.3d at 62).
[52] *McGuire,* 386 F.3d at 62.

creditors, that they are being treated differently based solely on the content of the allegedly discouraging comments made during the radio shows and podcasts, or that the Bureau is failing to enforce Regulation B against other creditors who are discouraging. Rather, they appear to be alluding to a retaliation-like defense based at least in part on alleged political and social views of Defendant Sturner that he has never expressed in the radio shows and podcasts.[53] Defendants have not cited any case where a party has asserted a similar First Amendment defense, they have yet to assert such a defense here, and they have failed to articulate what such a defense would entail. There is no basis for permitting discovery on a defense that has not been alleged or articulated.

Defendants also baselessly claim that their requests are enforceable because their First Amendment challenge is both facial and "as-applied."[54] An as-applied challenge tests the constitutionality of a regulation's application to a defendant's "particular form of speech,"[55] "specific activities,"[56] or specific "expressive activity."[57] The singular focus, not surprisingly, is on the expressive conduct sought to be regulated. Internal communications among government employees are not relevant to that inquiry. Accordingly, Defendants' allegation that the regulation is unconstitutional both on its face and as-applied does not somehow make the requested documents relevant (even if they did exist).

Defendants' remaining arguments merit little discussion. Defendants cite a range of cases for various high-level holdings to restate uncontested legal points about the government being

---

[53] Mot. to Compel, Ex. G.
[54] Objection 12 ("Third, evidence concerning CFPB's assessment of Townstone's social and political views would be relevant to an as-applied argument that CFPB is enforcing Regulation B in a content- or viewpoint-based manner.").
[55] *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012).
[56] *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011).
[57] *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 803 (1984).

prohibited from favoring one type of protected speech over another[58] or noting that jury verdicts can be overturned if speech is protected.[59] None of these cases involved discovery into individual employees' documents, much less indicate that the types of materials sought here are discoverable or relevant.

**II.     The requests are not proportional considering the substantial burdens associated with searching for and potentially logging and producing the requested documents.**

The Order did not discuss the proportionality of the documents sought.[60] However, should this Court find that either Request 41 or 42 seeks relevant documents that have not yet been produced, these Requests are also not proportional to the needs of the case and should be denied on that basis.[61] Proportionality is measured by looking at "the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[62]

The complaint, first filed in July 2020 and then amended in November 2020, was the culmination of a multi-year, pre-suit investigation led by Bureau attorneys that Townstone knew

---

[58] *See* Objection 10-11 (citing, in addition to cases discussed above, *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995); *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011); *Shurtleff v. City of Boston*, 142 S. Ct. 1583 (2022)).
[59] *See* Objection 8 (citing *Snyder v. Phelps*, 562 U.S. 443 (2011)).
[60] Order 15 ("Request Nos. 41 and 42 do not implicate the same privacy interests as the CFPB requests, but they are a frolic and detour, and they will be disallowed, before we even reach a proportionality analysis.").
[61] *Diamond Servs. Mgmt. Co. LLC v. C&C Jewelry Mfg., Inc.*, No. 19-CV-07675, 2022 WL 4466076, at *15 (N.D. Ill. Sept. 26, 2022) (affirming denial of motion to compel where the Magistrate Judge found any relevance to be "marginal compared to the substantial burdens associated with responding").
[62] Fed. R. Civ. P. 26(b)(1).

about as early as 2017.[63] The Bureau has had at least five different Directors or Acting Directors during that time and, as a result, just as many different management teams. Several Bureau attorneys worked directly and indirectly on the investigation, seven attorneys filed notices of appearance in this case, and one of those attorneys has since left the Bureau.[64] The vast majority of Bureau-generated documents created since the investigation's inception—whether exchanged among Bureau attorneys or staff or submitted for review, approval, or authorization to supervising attorneys or Bureau management—would also be protected from disclosure by the attorney-work-product doctrine, the attorney-client privilege, or the deliberative-process privilege.[65]

Defendants' request is not proportional because the burden of comprehensively searching for any responsive documents from all attorneys and staff who worked on the case and any supervisors, managers, or senior managers who reviewed filings or authorized actions, along with the burden, if any responsive documents are found, of logging documents as privileged or otherwise protected, would be undue.[66] And the impact on the case of any responsive documents would be, at best, negligible. Moreover, it is unclear what Defendants even mean by "political leaning or viewpoint" or by "social commentary," and attempting to search for any such documents from the records and emails of all attorneys, staff, and leadership who knew anything about the investigation or case at any point in the past several years would be a highly burdensome effort with no articulable or discernible fruit.

---

[63] Defs.' Resp. Mot. Compel, Ex. A, at 1, ECF No. 100-1, ("In or about 2017, the Consumer Financial Protection Bureau (CFPB) began investigating Townstone").
[64] *See* Reiferson Mot. to Withdraw, ECF No. 75.
[65] *See, e.g.*, *Navient Corp.*, 2018 at *5 (noting the privileges and protections that could apply to Bureau-generated documents sought during discovery).
[66] *See U.S. Bank Nat'l Assoc. v. Triaxx Asset Mgmt.*, No. 18-cv-4044, 2021 WL 4973611, at *2 (Oct. 25, 2021) (noting that proportionality concerns extend to the evaluation of privilege logs).

### III. Defendants' unsupported requests are impermissible fishing expeditions.

Defendants not only fail to cite a single case where courts have enforced discovery requests for documents like those requested here, they also fail to cite to any legitime reason to think that such documents exist. The Seventh Circuit has "often said" that discovery is not permitted when it is nothing more than an unsupported "fishing expedition"[67] based only on vague assertions or "speculative allegation[s]"[68] that responsive documents might exist. This Court, similarly, has noted that, even though some fishing "is generally necessary in the pretrial discovery process," "guesswork does not establish relevance," and discovery is not so broad so as to permit inquiry into each "conceivable matter that captures an attorney's interest."[69]

Through multiple filings in support of their motion to compel, and despite having already received all other discoverable documents and interrogatory responses from the Bureau, Defendants have proffered no legitimate reason to think that individual Bureau employees were considering Defendants' or radio stations' social or political views when the Bureau opened the investigation in or about 2017, during the multi-year investigation into Defendants' conduct, when the Bureau first filed its complaint in July 2020, when the Bureau amended its complaint in November 2020, or at any point since then.

Instead, Defendants resort to freewheeling speculation, claiming that it "would not be at all surprising"[70] and would be "entirely plausible"[71] that the Bureau created an internal document pertaining to Defendants' political or social views at some point since 2017. Defendants further

---

[67] *Sirazi v. Panda Express, Inc.*, No. 08-C-2345, 2009 WL 4232693, at *4 (N.D. Ill. Nov. 24, 2009) (internal quotations omitted).
[68] *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*, 674 F.3d 630, 637 (7th Cir. 2012).
[69] *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 3050230, at *7 (N.D. Ill. June 8, 2020).
[70] Objection 13.
[71] Objection 15.

reflect that "many people today believe that the police are racist, that criticisms of crime are synonymous with race, and that conservatives are dog whistling to racists."[72] Calling something plausible or unsurprising does not make it so, and Defendants' assumptions about people and Bureau employees are distractions from the actual issues in this matter.

## CONCLUSION

For the foregoing reasons, Defendants seek documents that exceed the appropriate scope of discovery, and the Bureau respectfully requests that Defendants' Objection and their motion to compel be denied.

Respectfully submitted,

/s/ Jacob A. Schunk
JACOB A. SCHUNK (IA AT001908)
Email: jacob.schunk@cfpb.gov
Telephone: (202) 718-0394
GREGORY W. JONES (IL ARDC #6313157)
Email: gregory.jones@cfpb.gov
MARY OLSON (IL ARDC #6297334)
Email: mary.olson@cfpb.gov

230 S. Dearborn St., Suite 1590
Chicago, IL 60604

and

1700 G Street, NW
Washington, DC 20552

Attorneys for the Bureau of Consumer Financial Protection

---

[72] Objection 13.