## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

BUREAU OF CONSUMER FINANCIAL
PROTECTION,

Plaintiff,

    v.

TOWNSTONE FINANCIAL, INC.
and BARRY STURNER,

Defendants.

Case No. 1:20-cv-04176

## **NOTICE OF APPEAL**

Plaintiff Bureau of Consumer Financial Protection hereby gives notice that it appeals to the United States Court of Appeals for the Seventh Circuit from the final judgment entered in this action on February 3, 2023 (Docket No. 111).


Date: April 3, 2023

Respectfully submitted,

/s/ Jacob A. Schunk
JACOB A. SCHUNK (IA AT001908)
Email: jacob.schunk@cfpb.gov
Telephone: (202) 718-0394
GREGORY W. JONES (IL ARDC #6313157)
Email: gregory.jones@cfpb.gov
MARY OLSON (IL ARDC #6297334)
Email: mary.olson@cfpb.gov

230 S. Dearborn St., Suite 1590
Chicago, IL 60604

and

1700 G Street, NW
Washington, DC 20552

Attorneys for the Bureau of Consumer Financial
Protection

1

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

BUREAU OF CONSUMER FINANCIAL
PROTECTION,

Plaintiff,

v.

TOWNSTONE FINANCIAL, INC.
and BARRY STURNER,

Defendants.

Case No. 1:20-cv-04176

## SEVENTH CIRCUIT RULE 3(c) DOCKETING STATEMENT

Pursuant to Seventh Circuit Rule 3(c), Plaintiff Bureau of Consumer Financial Protection

(Bureau) submits this docketing statement along with its Notice of Appeal.

### I.      Jurisdiction of the District Court

The district court had jurisdiction over this action because it was brought under federal

law (the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f, and an implementing

regulation, 12 C.F.R. Part 1002; the Consumer Financial Protection Act of 2010, 12 U.S.C.

§ 5536(a)(1)(A); and the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3301–3308),

presented federal questions, 28 U.S.C. § 1331, and was brought by an agency of the United

States, 28 U.S.C. § 1345.

### II.      Jurisdiction of the Court of Appeals

The U.S. Court of Appeals for the Seventh Circuit has jurisdiction over this appeal under

28 U.S.C. § 1291. The Bureau seeks review of a final judgment entered by the district court on

February 3, 2023 (Docket No. 111). That judgment dismissed the Bureau's complaint, thereby

denying all relief sought by the Bureau. The Bureau files its notice of appeal concurrently with

this Docketing Statement, on April 3, 2023.

### III. Prior or Related Appellate Proceedings

There are no prior or related appellate proceedings.

### IV. Additional Requirements of Circuit Rule 3(c)(1)

This case does not involve a criminal conviction or a collateral attack on a criminal conviction, nor is there any prior relevant litigation in the district court that satisfies the criteria of 28 U.S.C. § 1915(g).


Date: April 3, 2023

Respectfully submitted,

/s/ Jacob A. Schunk
JACOB A. SCHUNK (IA AT001908)
Email: jacob.schunk@cfpb.gov
Telephone: (202) 718-0394
GREGORY W. JONES (IL ARDC #6313157)
Email: gregory.jones@cfpb.gov
MARY OLSON (IL ARDC #6297334)
Email: mary.olson@cfpb.gov

230 S. Dearborn St., Suite 1590
Chicago, IL 60604

and

1700 G Street, NW
Washington, DC 20552

Attorneys for the Bureau of Consumer Financial Protection

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>   Plaintiff,<br><br>  v.<br><br>TOWNSTONE FINANCIAL, INC. and BARRY STURNER,<br><br>   Defendants. | No. 20-cv-4176<br>Judge Franklin U. Valderrama |

### MEMORANDUM OPINION AND ORDER

The Equal Credit Opportunity Act (ECOA) makes it "unlawful for any creditor to discriminate against any applicant with, respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691(a). The ECOA's implementing regulation, Regulation B, extends the ECOA's prohibition to "prospective applicants." 12 C.F.R. § 1002.4(b). The Bureau of Consumer Financial Protection (CFPB) filed this lawsuit against Townstone Financial, Inc. (Townstone), a mortgage broker/lender and its owner Barry Sturner (Sturner) (collectively, Defendants) for allegedly discouraging prospective African-American applicants in the Chicago metropolitan area from applying for mortgages. R. 27, First Amended Complaint (FAC).[1] Defendants have moved to dismiss the FAC with prejudice. R. 31, Mot. Dismiss. For the following reasons, Defendants' motion to dismiss is granted.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

## Background

### I.  The Parties

The CFPB is an independent agency of the United States created by the Consumer Financial Protection Act of 2010 (CFPA), with authority to enforce the CFPA and ECOA. FAC ¶ 8.² Townstone is a mortgage broker/lender headquartered in Chicago, which operates in Illinois, Indiana, Michigan, Wisconsin, and Florida. *Id.* ¶ 9. Most of Townstone's mortgage lending and brokering takes place in the Chicago-Naperville-Elgin Metropolitan Statistical Area (Chicago MSA). *Id.* ¶¶ 4, 9. Sturner is Townstone's co-founder, sole owner, sole director, President, and Chief Executive Officer. *Id.* ¶ 13. Sturner is also a loan officer. *Id.*

### II.  The Townstone Financial Show

Starting as early as 2014, Townstone has marketed its services through its own radio show and podcast called "The Townstone Financial Show." FAC ¶ 24. The Townstone Financial Show was conducted weekly on AM radio and reached the entire Chicago MSA. *Id.* ¶ 29. A weekly podcast of the radio show is also made available online, and the show has been streamed on Facebook Live and advertised on Facebook, Twitter, and LinkedIn. *Id.* The Townstone Financial Show is a long-form commercial advertisement, in which the hosts discuss mortgage-related issues on the show and take questions from prospective applicants. *Id.* ¶ 26. Since about January 2015, the Townstone Financial Show has been co-hosted by Sturner and another

---

²The Court accepts as true all of the well-pled facts in the FAC and draws all reasonable inferences in favor of the CFPB. *Smith v. City of Chicago*, 3 F.4th 332, 334 n.1 (7th Cir. 2021) (internal citation omitted).

senior loan officer. *Id.* ¶ 27. Townstone's website and the Townstone Financial Show characterize the hosts of the Townstone Financial Show as "Chicago real-estate experts." *Id.* ¶ 28.

The Townstone Financial Show has allegedly included statements that would discourage African-American prospective applicants from applying for mortgage loans from Townstone. FAC ¶ 32. For instance, during a January 2014 broadcast of the Townstone Financial Show, a caller from Markham, Illinois, a city with an 80.3% African-American population, asked how he and his wife could improve their credit scores. *Id.* ¶ 33. The Townstone host responded that "[you've] got to keep those women in line over there in Markham." *Id.* The host went on to state that the caller should "stop spending freaking money [on his wife] and tell her to get a better job." *Id.* While discussing the couple's credit concerns, the host turned his comments toward Markham generally, claiming that "it's crazy in Markham on weekends" and stating, "I know, I've been to Markham." *Id.* "You drive very fast through Markham," he continued, "and you don't look at anybody or lock on anybody's eyes in Markham . . . . You look at your dashboard, you don't lock on anybody." *Id.*

In the same month, Townstone's then-president informed listeners on the Townstone Financial Show that it was a great time to buy, rent, and sell. FAC ¶ 34. The show's hosts, including a local realtor and a bankruptcy attorney, recommended that the listeners who were preparing a home for sale should take down their Confederate flags. *Id.*

3

In a June 2016 episode of the Townstone Financial Show, Sturner volunteered his view of the South Side of Chicago, an area that is majority-African American. FAC ¶ 35. Sturner stated that the South Side of Chicago is "hoodlum weekend" between Friday and Monday, and that the police are "the only ones between that [area] turning into a real war zone and keeping it where it's kind of at." *Id.*

In January 2017, on the Townstone Financial Show, Sturner and the other hosts discussed a now-replaced grocery store in downtown Chicago that was part of the Jewel-Osco grocery-store chain. FAC ¶ 36. Sturner described "[having] to go to the Jewel on Division," which he referred to as "Jungle Jewel." *Id.* Sturner called the "Jungle Jewel" a "scary place," attributing his fear and the store's nickname to the "Jungle Jewel's" patrons who "packed" the store and "were people from all over the world." *Id.*

In a November 2017 episode, Townstone's senior loan officer discussed a recent skydiving experience and the ensuing "rush" from the jump. FAC ¶ 37. Another Townstone host responded that he thought skydiving was crazy, and suggested that someone who walked "through the South Side at 3AM." could get the "same rush." *Id.*

Despite African Americans making up 30% of the population of the City of Chicago, Townstone has not targeted any marketing toward African Americans in the Chicago MSA. FAC ¶ 40.

## III. Applications from African-American Neighborhoods

Based on Home Mortgage Disclosure Act data from 2014 through 2017, Townstone received an average of 740 mortgage-loan applications each year. FAC

4

¶ 42. Townstone brokered an average of 60 total Federal Housing Administration and Veterans Administration home loans each year. *Id.*

Townstone has drawn few mortgage applications from African-American applicants throughout the Chicago MSA. FAC ¶ 43. From 2014 to 2017, for example, Townstone drew around 2,700 applicants, only 37 (1.4%) of which came from African Americans in the Chicago MSA. *Id.* During the same period, Townstone drew an average of five or six applications each year (0.8%, 0.8%, 0.7%, and 0.9% of all Townstone applications) for properties in high-African-American neighborhoods, even though such neighborhoods made up 13.8% of the Chicago MSA's census tracts. *Id.* ¶ 44. Of Townstone's five or six applications each year for properties in high-African-American neighborhoods (more than 80% African American), more than half each year were from non-Hispanic white applicants. *Id.*

Similarly, only 2.3%, 1.4%, 1.4%, and 2.2% of Townstone's applications for the years 2014 through 2017, respectively, came from applicants applying for mortgage loans for properties in majority-African-American areas, even though 18.7% of the Chicago MSA's census tracts were majority-African American. FAC ¶ 45. While Townstone drew 2.3%, 1.4%, 1.4%, and 1.3% of its applications for properties in majority-African-American neighborhoods from 2014 through 2017, respectively, Townstone's peers drew many times more—8.2%, 7.6%, 7.7%, and 8.1%. *Id.* ¶ 49.

## IV.    Procedural History

The CFPB filed suit against Defendants on July 15, 2020, R. 1, and amended its complaint on November 25, 2020, FAC. The three-count complaint alleges that:

(1) Townstone violated the ECOA, 15 U.S.C. § 1691(a), and its implementing regulation, Regulation B, 12 C.F.R. § 1002.4(b) (Count I); (2) Townstone violated the CFPA, 12 U.S.C. § 5536(a)(1)(A) (Count II); and (3) Sturner fraudulently transferred assets in violation of 28 U.S.C. §§ 3301–3308. FAC ¶¶ 53–78. Defendants have moved to dismiss the FAC. Mot. Dismiss. Defendants subsequently filed a motion for leave to file a notice of supplemental authority regarding *W. Virginia v. Env't Prot. Agency*, 213 L. Ed. 2d 896, 142 S. Ct. 2587 (2022). R. 65; R. 67. The CFPB responded to Defendants' notice of supplemental authority. R. 71.[3] The Court subsequently held an in-person hearing on Defendants' motion to dismiss the FAC. R. 74.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

---

[3]In *West Virginia*, the Supreme Court held that the Environmental Protection Agency (EPA) did not have authority to adopt the regulation at issue because it raised a "major question" of "economic and political significance" as to which Congress had not clearly delegated authority to the EPA. 142 S. Ct. at 2613. The Court has considered Defendants' arguments as to the applicability of *West Virginia* to this case, R. 67, and the CFPB's response, R. 71, and agrees with the CFPB that the major-questions doctrine is unimportant to the issue presented here.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

## I.    The ECOA and Regulation B (Count I)

The CFPB alleges that Townstone's acts and practices would discourage African-American prospective applicants, as well as prospective applicants in majority- and high-African-American neighborhoods in the Chicago MSA from seeking credit, in violation of Regulation B and the ECOA. FAC ¶¶ 54–55.

The ECOA provides, in relevant part, that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract) . . . ." 15 U.S.C. § 1691(a). The ECOA was a landmark civil rights law enacted in 1974 to protect individuals and businesses against discrimination in accessing and using credit, "a virtual necessity of life" for most Americans. S. Rep. No. 94-589, at 3–4 (1976); *see also Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) (the ECOA enacted to prohibit discrimination in credit transactions).

7

In Section 1691b of the ECOA, Congress directed, first the Federal Reserve Board, and then the CFPB,[4] to make regulations to carry out the purposes of the ECOA:

> The Bureau shall prescribe regulations to carry out the purposes of this subchapter. These regulations may contain but are not limited to such classifications, differentiation, or other provision, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Bureau are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate or substantiate compliance therewith.

15 U.S.C. § 1691b(a).

The resulting regulations enacted in 1975, known collectively as Regulation B, provide in pertinent part:

> Discouragement. A creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application.

12 C.F.R. § 1002.4(b).

Defendants move to dismiss Count I based on Regulation B and the ECOA, arguing that the CFPB improperly attempts to expand the ECOA's reach beyond the express and unambiguous language of the statute. R. 32, Memo. Dismiss at 5 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984)). Specifically, Defendants argue that while the ECOA regulates behavior towards applicants for credit, it does not regulate any behavior relating to prospective

---

[4]In 2010, Congress transferred the Federal Reserve Board's rulemaking authority to the CFPB. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376, 2083–84 (2010); *see Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1208 n.9 (11th Cir. 2019).

applicants who have not yet applied for credit. Memo Dismiss at 4. The CFPB responds that Regulation B's longstanding discouragement prohibition is authorized by and necessary to the ECOA, and that courts have consistently recognized Regulation B's discouragement prohibition, even when applied to prospective applicants. R. 35, Resp. at 8–10 (citing *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698 (5th Cir. 2017); *Dhade v. Huntington Learning Centers, Inc.*, 414 F. Supp. 3d 703 (D. Del. 2019); *Page v. Midland Fed. Sav. & Loan Ass'n*, 2013 WL 5211747, at *5 (N.D. Ill. Sept. 13, 2013)).

The parties' arguments present the question of whether the agency's interpretation of the ECOA in Regulation B is one that the ECOA permits. The Court approaches that inquiry, as it must, "through the two-step framework set forth in *Chevron*[.]" *Cook Cnty., Illinois v. Wolf*, 962 F.3d 208, 221 (7th Cir. 2020) (citing *Chevron*, 467 U.S. 837). The first step of *Chevron* is to determine "whether Congress has directly spoken to the precise question at issue." *Id.* (internal quotation marks omitted). If Congress has spoken to the precise question at issue "unambiguously," then "that is the end of it: the agency and courts alike are bound by what Congress wrote." *Id.* However, if Congress has "not spoken clearly," the court moves on to step two, in which the court "consider[s] whether the agency's interpretation reflects a permissible construction of the statute." *Id.*

## A. *Chevron* Step One

Turning to step one of *Chevron*, as stated above, the Court looks to the text of the ECOA to determine "whether Congress has directly spoken to the precise question

at issue," *Wolf*, 962 F.3d at 221, namely, whether the ECOA prohibits discouragement of prospective applicants on the basis of race. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Turley v. Gaetz*, 625 F.3d 1005, 1008 (7th Cir. 2010) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)) (internal quotation marks omitted). "Statutory interpretation is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy." *Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550 (7th Cir. 2013) (internal quotation marks and citation omitted). "Indeed, statutory interpretation is a holistic endeavor and, at a minimum, must account for the statute's full text, language as well as punctuation, structure, and subject matter." *Trs. of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996) (internal quotation marks and citation omitted); *see also Estate of Moreland v. Dieter*, 576 F.3d 691, 699 (7th Cir. 2009).

The ECOA states that "[i]t shall be unlawful for any creditor to *discriminate against any applicant*, with respect to any aspect of a credit transaction—*on the basis of race*, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract) . . . ." 15 U.S.C. § 1691(a) (emphases added). The ECOA further defines "applicant" to mean "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor

indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id.* § 1691a(b).

The plain text of the ECOA thus clearly and unambiguously prohibits discrimination against *applicants*, which the ECOA clearly and unambiguously defines as a person who applies to a creditor for credit. 15 U.S.C. §§ 1691(a), 1691a(b). The Court therefore finds that Congress has directly and unambiguously spoken on the issue at hand and only prohibits discrimination against applicants. As such, "that is the end of it," *Wolf*, 962 F.3d at 221, and the Court need not move on to the second step of the *Chevron* analysis because it is clear that the ECOA does not apply to prospective applicants.[5] The Court consequently affords no deference to 12 C.F.R. § 1002.4. *See, e.g.*, *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1173 (9th Cir. 1999) (affording no weight to 28 C.F.R. § 35.140(a), having found that "Congress unambiguously expressed its intent for Title II not to apply to employment"); *Patterson v. Illinois, Dep't of Corr.*, 35 F. Supp. 2d 1103, 1108 (C.D. Ill. 1999) (same).

Case law supports the Court's interpretation of the ECOA. The Seventh Circuit similarly found the ECOA's definition of "applicant" to be unambiguous in *Moran Foods, Inc. v. Mid-Atlantic Market Development Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007), a case cited by Defendants. There, Susan Camp, a party who had guaranteed her husband's debt, brought a counterclaim alleging that a grocery store had violated

---

[5]Because the Court finds that the ECOA unambiguously applies to "applicants" and not "prospective applicants," the Court does not analyze whether the ECOA's prohibition on "discrimination" encompasses "discouragement." The Court likewise does not reach Defendants' argument that the CFBP is attempting to create affirmative obligations with respect to marketing and the hiring of loan officers, nor its arguments under the First and Fifth Amendments. Memo. Dismiss at 8–9, 12–23.

the ECOA by discriminating against her based on her marital status. *Id.* at 437. Camp obtained a jury verdict on her ECOA counterclaim. *Id.* On appeal, Camp asked to be awarded the attorney's fees that she incurred in litigating her ECOA case and pursued additional relief under the ECOA. *Id.* at 437–38.

In assessing Camp's ECOA claim, the Seventh Circuit initially concluded that she was not an applicant at all: "Susan Camp was not an applicant for credit, and neither received credit nor was denied it. Instead, she guaranteed her husband's debt and by doing so enabled his company to buy groceries from Moran on credit." *Moran*, 476 F.3d at 441. The court recognized, however, that the Federal Reserve Board had "defined 'applicant' for credit (the term in the statute) to include a guarantor." *Id.* (citing 12 C.F.R. §§ 202.2(e), 202.7(d)). While the Seventh Circuit acknowledged that "courts defer to administrative interpretations of statutes when a statute is ambiguous," the court found that "there is nothing ambiguous about ' applicant' and no way to confuse an applicant with a guarantor." *Id.* (citations omitted). The court in *Moran* elaborated that "to interpret 'applicant' as embracing 'guarantor' opens vistas of liability that the Congress that enacted the Act would have been unlikely to accept." *Id.*[6] So too here, the Court doubts that the ECOA can be "stretched far

---

[6] Ultimately, the court in *Moran* found that even if the Federal Reserve Board's interpretation were authorized, Camp's ECOA claim "must lose because she failed to prove discrimination." 476 F.3d at 441. The court therefore reversed the judgment of the district court. *Id.* at 442. As a result, the Seventh Circuit's ECOA discussion in *Moran* is non-binding dicta. *See FirstMerit Bank, N.A. v. Ferrari*, 71 F. Supp. 3d 751, 758–59 (N.D. Ill. 2014). Even so, the analysis provides a straightforward interpretation of the ECOA, which the Court finds persuasive.

enough" to interpret a prohibition of discrimination against *applicants* as prohibiting discrimination of *prospective applicants. Id.*

Defendants direct the Court to other Court of Appeals decisions as well, which hold that an "applicant" does not encompass a "guarantor" under the ECOA. Memo. Dismiss at 7 (citing *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 942 (8th Cir. 2014); *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1193 (11th Cir. 2019)). Both decisions buttress this Court's finding that no deference is owed to Regulation B's anti-discouragement provision for prospective applicants.

In *Hawkins*, for example, the plaintiffs, guarantors, brought an ECOA claim alleging that the defendant bank discriminated against them based on their marital status. 761 F.3d at 939. The district court granted summary judgment against the plaintiffs, holding that they did not constitute "applicants" under the ECOA. *Id.* at 940. On appeal, the plaintiffs insisted they could bring a claim under the ECOA because 12 C.F.R. § 202.2(e) of Regulation B provided that the definition of "applicant" included a guarantor. *Id.* Observing that the case turned on whether the court should defer to Regulation B Section 202.3(e)'s definition of "applicant," which would allow the plaintiffs' suit, the court applied the *Chevron* two-step framework. *Id.* At step one, the Eighth Circuit found that the "text of the ECOA clearly provides that a person does not qualify as an applicant under the statute solely by virtue of executing a guaranty to secure the debt of another." *Id.* at 941. The court looked to the ECOA's definition of "applicant," reviewed the dictionary definition for "apply," and concluded that "the plain language of the ECOA unmistakably provides that a

person is an applicant only if she requests credit." *Id.* (citing 15 U.S.C. § 1691a(b); Webster's Third New International Dictionary 105 (2002)). "Because the text of the ECOA is unambiguous regarding whether a guarantor constitutes an applicant," the Eight Circuit stopped after *Chevron* step one and did not defer to the agency's interpretation of applicant. *Id.* at 942.

In *Regions Bank*, defendants who had been sued for breach of promissory notes and breach of guaranties brought counterclaims alleging they were discriminated against on the basis of marital status in violation of the ECOA. 936 F.3d at 1187. After losing on summary judgment, the defendants appealed, relying on the definition of "applicant" in Regulation B to argue that they could bring their ECOA counterclaims. *Id.* at 1190. The Eleventh Circuit, like the Eighth, applied the two-step *Chevron* framework to determine whether it owed deference to Regulation B's interpretation of "applicant." *Id.* Because the court "agree[d] with the Seventh and Eighth Circuits that the ordinary meaning of 'applicant' does not encompass a guarantor," the Eleventh Circuit concluded that no deference was due Section 202.2(e). *Id.* at 1193 (citing *Moran*, 476 F.3d at 441; *Hawkins*, 761 F.3d at 942). *But see RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 385 (6th Cir. 2014) (proceeding to *Chevron* step two and deferring to section 202.2(e) on theory that the term "applies" is ambiguous and that guarantors qualify as requesting credit because they "make formal requests for aid in the form of credit for a third party").

14

The CFPB attempts to distinguish Defendants' authority by arguing that the cases are inapposite because they analyze whether a "guarantor" is within the definition of "applicant" for purposes of bringing a private action under the ECOA. Resp. at 8–9. The CFPB posits that neither the definition of "applicant," nor the question of whether a private right of action exists, is at issue in this case. *Id.* at 9. True, the cases cited by Defendants involved the question of whether individual guarantors could maintain an action under the ECOA. But the analysis employed by the courts to resolve the issue in those cases provides a sound framework to resolve the issue in this case.

The CFPB argues that it has more expansive enforcement powers than the private right of action, and moreover, its authority to prohibit discouragement of "prospective applicants" does not require stretching the term "applicant" to encompass "prospective applicants." *Id.* The Court disagrees.

The CFPB's authority to enact regulations is not limitless. Under Section 1691b, the CFPB "shall prescribe regulations to carry out the purposes of [the ECOA]." 15 U.S.C. § 1691b(a). While the delegating section is, no doubt, broad,[7] the ECOA explicitly defines its "Scope of prohibition" as: "[i]t shall be unlawful for any creditor to discriminate against any *applicant*, with respect to any aspect of a credit transaction—on the basis of race[.]" *Id.* § 1691(a) (emphasis added). Indeed, the entire statutory scheme revolves around applicants. As Defendants point out, the word

---

[7]The CFPB, relying on the *Mourning* test, argues that the broad language in Section 1691b means that it can enact any regulations "reasonably related" to the purposes of the ECOA. Resp. at 6–7. As discussed further below, the CFPB cannot use the *Mourning* test to avoid the two-step *Chevron* framework. *See infra* Section I.B.

"applicant" is used twenty-six times in the statute, and the statute does not prohibit or discuss conduct prior to the filing of an application. *See* Memo. Dismiss at 4. So, contrary to the CFPB's position, the statute's expression of "applicant," is essential to understanding whether the CFPB can regulate with respect to "prospective applicants." The CFPB cannot regulate outside the bounds of the ECOA, and the ECOA clearly marks its boundary with the term "applicant."

The Court's reading of the ECOA, moreover, is not limited to the civil liability section of the ECOA, which provides that "[a]ny creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." 15 U.S.C. § 1691e(a).[8] That is, the Court is not looking exclusively at the private right of action section of the ECOA to conclude that the whole act applies only to those who qualify as proper plaintiffs under that section. While this case may not present the specific issue of whether a private right of action exists for a private prospective applicant under Section 1691e, Count I, nevertheless,

---

[8] By contrast, the holding in one of the cases relied on by the CFPB, *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698 (5th Cir. 2017), was limited to the court's interpretation of the civil liability section, Section 1691e. There, the court found, without applying the *Chevron* framework, that "[d]iscouragement of a 'prospective applicant' may be regulatorily prohibited, but it cannot form the basis of a private claim or cause of action under the ECOA." *Id.* at 708. The Court finds *Alexander* of limited utility because the court did not address whether the court should defer to Regulation B under the two-step *Chevron* framework. Similarly, in *Dhade*, 414 F. Supp. 3d at 707, another case relied on by the CFPB limited to a claim brought under the civil liability section, the court found that Regulation B did not expand the definition of "applicant" to include "prospective applicant" in Section 1691e. Although the court noted that "the ECOA vested the CFPB with enforcement powers that are more expansive than the private right of action," it also applied *Chevron* step one to find that "[t]here is nothing ambiguous about 'applicant,'" meaning the court should not defer to an agency's interpretation of the statute. *Id.* at 706–07.

16

cannot stand if it is based on a portion of Regulation B to which the Court owes no deference. Put another way, the ECOA says nothing about "prospective applicants," so if the Court does not defer to Regulation B, Count I fails to state a claim, regardless of Section 1691e. *C.f. Dhade*, 414 F. Supp. 3d at 707.

To further rebut Defendants' authority, the CFPB cites to cases which purportedly acknowledge and treat Regulation B's discouragement of prospective applicants as presumptively valid. Resp. at 9–10 (citing *Treadway*, 362 F.3d at 979–80; *Harbaugh v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 615 F.2d 1169, 1174 (7th Cir. 1980)). Yet, a court's acknowledgment of—or even reliance on—a regulation, when the validity of that regulation is not dispute, does not help the Court resolve the *Chevron* deference question at play here. The CFPB points to *Page*, 2013 WL 5211747, at *5, in which the court rejected Defendant's argument that the individual plaintiff's claim under the civil liability provision failed because she never submitted an application. The court looked to Regulation B's language and found that "the ECOA applies to all stages of a credit transaction." *Id.* However, the court did not engage in the two-step *Chevron* analysis to determine whether the court should defer to Regulation B. *Id.* After applying the *Chevron* analysis, the Court respectfully disagrees with the court's deference to Regulation B in *Page*. The CFPB cites to no authority in which a court engaged in a *Chevron* analysis and after doing so, deferred to the anti-discouragement provision in Regulation B. For the reasons stated above, the Court finds that, when applying step one of *Chevron*, it cannot defer to Regulation

17

B's anti-discouragement provision of with respect to "prospective applicants," no matter how desirable it might be to do so as a policy matter.

### B. The CFPB's Reliance on the *Mourning* Standard

Rather than engage in any *Chevron* analysis, the CFPB attempts to skirt the *Chevron* framework by emphasizing the broad language of the delegation provision of the ECOA, Section 1691b. Resp. at 6 (citing 15 U.S.C. § 1691b(a)). According to the CFPB, "Congress understood that additional rules may be necessary to prevent evasion of [the] ECOA's prohibitions and expressly instructed the Board, then the [CFPB], to enact any such rules." *Id.* The CFBP essentially suggests that Congress gave the CFPB rulemaking carte blanche in Section 1691b. In support, the CFPB directs the Court to a similar "anti-evasion provision" in the Truth in Lending Act (TILA), 15 U.S.C. § 1604(a)), as well as a pre-*Chevron* case interpreting the TILA, *Mourning v. Fam. Publ'ns Serv., Inc.*, 411 U.S. 356 (1973). *Id.* at 6–7.

In *Mourning*, the Supreme Court addressed whether the Federal Reserve Board had exceeded its authority under the TILA in promulgating a portion of its Regulation Z, commonly referred to as the "Four Installment Rule." 411 U.S. at 358. Section 121 of the TILA required merchants who regularly extend credit with attendant finance charges to disclose certain contract information. 15 U.S.C. § 1631. The Federal Reserve Board promulgated Regulation Z, which required disclosure under Section 121 of the TILA whenever credit is offered to a consumer "for which either a finance charge is or may be imposed or which pursuant to an agreement, is or may be payable in more than four installments." 411 U.S. at 362 (citing 12 CFR

§ 226.2(k)). To determine whether the Federal Reserve Board had exceeded its rulemaking authority, the Supreme Court looked to the delegation provision of the TILA, Section 105, which provided that the Federal Reserve Board "shall prescribe regulations to carry out the purposes of (the Act). These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of (the Act), to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. § 1604.

From this language, the Supreme Court found that Congress gave the Federal Reserve Board "broad authority to promulgate regulations necessary to render the Act effective." 411 U.S. at 365. Specifically, the Court in *Mourning* highlighted both the general grant of authority to promulgate regulations designed to carry out the purposes of the act, as well as the language in Section 105 allowing regulations that may define classifications and exceptions to ensure compliance with the TILA. *Id.* Under the applicable precedent at the time, where an empowering provision of a statute, like Section 105, gave the agency the power to make such rules and regulations as may be necessary to carry out the act, the validity of a regulation promulgated under such an empowering provision would be sustained, so long as it was "reasonably related to the purposes of the enabling legislation." 411 U.S. at 369 (internal quotation marks and citations omitted). The Supreme Court therefore upheld the "Four Installment Rule" because the rule was reasonably related to the

TILA's objectives of preventing the evasion of its reporting requirements by concealing credit charges. *Id.* at 371.

The CFPB submits that, per the *Mourning* decision, the anti-discouragement provision of Regulation B must be sustained, so long as it is reasonably related to the ECOA's objectives. Resp. at 7. The Seventh Circuit, contends the CFPB, "has likewise held that rules necessary to render TILA effective must be sustained so long as they are reasonably related to the legislation's purposes." *Id.* (citing *Muro v. Target Corp.*, 580 F.3d 485, 494 n.9 (7th Cir. 2009)). However, neither *Mourning* nor *Muro* permits this Court to dodge the two-step *Chevron* framework.

First and foremost, the Supreme Court mandates that a court faced with a disputed agency interpretation must apply *Chevron*. In *City of Arlington, Tex. v. F.C.C.*, for example, the Supreme Court rejected using a non-*Chevron* standard when an agency interprets the scope of its own statutory authority. 569 U.S. 290, 296–97 (2013). The Supreme Court held that the *Chevron* framework applied, reasoning that "[n]o matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*." *Id.* at 297 (emphasis in original). And in an earlier, post-*Mourning* case analyzing the TILA, the Supreme Court approached a regulation, not by asking whether the Federal Reserve Board's interpretation was reasonably related to TILA's objectives (the *Mourning* test), but by asking whether the statute had spoken on the issue (*Chevron* step one): "In determining whether the Board was empowered to make such a change, we begin, of

course, with the language of the statute. If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 368 (1986) (citing *Chevron*, 467 U.S. at 842–43); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 92 (2002) (explaining that *Mourning* does not authorize agencies to "contravene Congress' will").

Seventh Circuit decisions, too, plainly require the Court to apply the *Chevron* framework when faced with a disputed agency interpretation that merits *Chevron* deference.[9] *See, e.g., Zaragoza v. Garland*, 52 F.4th 1006, 1019 (7th Cir. 2022) (applying two-step *Chevron* framework to decision of Attorney General interpreting federal immigration statutes); *Wolf*, 962 F.3d at 221 ("The overriding question is whether the agency's interpretation of the relevant statute is one the text will permit. We approach this inquiry through the two-step framework set forth in *Chevron*[.]"); *Khan v. United States*, 548 F.3d 549, 554 (7th Cir. 2008), *as amended* (Dec. 4, 2008) (reviewing general authority regulations under the two-step *Chevron* framework).

Because the *Chevron* framework reigns supreme, numerous courts have rejected similar agency attempts to eschew *Chevron* in favor of *Mourning*. For instance, Defendants point to *First Premier Bank v. U.S. Consumer Fin. Prot. Bureau*,

---

[9]An agency interpretation qualifies for *Chevron* step one when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 625–26 (7th Cir. 2013). This threshold question, sometimes referred to as "Chevron step zero," *see, e.g., Pugin v. Garland*, 19 F.4th 437, 441 (4th Cir. 2021), is not disputed in this case.

819 F. Supp. 2d 906, 909 (D.S.D. 2011). R. 38, Reply at 2–3. In *First Premier Bank*, a bank sued the CFPB, seeking a preliminary injunction to postpone and enjoin the effective date of an amendment to a credit card fee regulation. 819 F. Supp. 2d at 909. The bank attacked the regulation amendment under the Administrative Procedure Act. *Id.* at 911–12. In analyzing the disputed regulation amendment, the court applied the two-step *Chevron* framework. *Id.* at 914. The CFPB argued that the *Chevron* framework did not apply, citing *Mourning* and two other pre-*Chevron* cases. *Id.* at 917 (citing *Anderson Bros. Ford v. Valencia*, 452 U.S. 205 (1981); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980); *Mourning*, 411 U.S. 356). The court rejected the CFPB's contention, stating "the language of *Mourning* and its progeny make sense standing alone only in a pre-*Chevron* setting" in which "'pre-*Chevron* courts frequently looked to the relative competence of the agency and the court in deciding the matter in question.'" *Id.* at 917–18 (quoting *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. N.L.R.B.*, 46 F.3d 82, 90 (D.C. Cir. 1995)).

Similarly in *Colorado River Indian Tribes v. Nat'l Indian Gaming Comm'n*, the National Indian Gaming Commission argued that its minimum internal control standards for a casino should be sustained under *Mourning*, as the rules were "reasonably related to the statutory purposes of the [Indian Gaming Regulatory Act]." 383 F. Supp. 2d 123, 143 (D.D.C. 2005), *aff'd*, 466 F.3d 134 (D.C. Cir. 2006). The court disagreed, explaining that "courts and agencies 'are bound, not only by the ultimate purposes Congress has selected but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.'" *Id.* (quoting *MCI Telecommunications*

22

*Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 231 n.4 (1994)). The court concluded that "although *Mourning* stated that a broad grant of rule-making authority allows an agency to issue regulations that are 'reasonably related to the purposes of the enabling legislation,' courts have consistently read this language to describe a heightened level of deference that is due the agency's interpretation of an ambiguous statute under *Chevron* step two, *rather than a warrant to override a clear statute under Chevron step one.*" *Id.* at 144 & n.15 (emphasis added) (collecting cases).

The Court joins *First Premier Bank* and *Colorado River Indian Tribes* in declining the agency's invitation to bypass *Chevron* by way of *Mourning*. The Court further sides with the numerous courts who have held that *Mourning*'s application belongs, if anywhere, in *Chevron* step two. *See, e.g., Merck & Co. v. United States Dep't of Health & Hum. Servs.*, 385 F. Supp. 3d 81, 88–89 (D.D.C. 2019), *aff'd*, 962 F.3d 531 (D.C. Cir. 2020) (rejecting agency's attempt to circumvent *Chevron* in light of *Mourning* and collecting cases situating *Mourning* with *Chevron*'s second step); *Chamber of Com. of U.S. v. N.L.R.B.*, 721 F.3d 152, 161 (4th Cir. 2013) (holding *Mourning* analysis only relevant once the court has determined that a statute is ambiguous, concluding "*Mourning*'s exhortation that we 'defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority,' . . . cannot be read as requiring [the court] to defer to the agency's interpretation as [the court] conduct[s its] initial analysis of the Act."); *Brackeen v. Haaland*, 994 F.3d 249, 360 (5th Cir. 2021) (applying *Mourning* test in second step of

23

*Chevron*). Here, because the ECOA is unambiguous, the Court does not reach *Chevron* step two,[10] and *Mourning* is inapplicable.

The Seventh Circuit's *Muro* decision does not revive *Mourning*'s significance either. In *Muro*, the Seventh Circuit reviewed a district court's denial of class certification in an attempted TILA class action. 580 F.3d at 487. When interpreting Section 1637(a) of TILA, the court found that TILA was silent on "when an account is 'open.'" *Id.* at 493. Having found a gap in the statute, the court looked to Regulation Z's specification that initial disclosures must be made before the first transaction is made under the plan. *Id.* (citing 12 C.F.R. § 226.5(b)(1)). Dropping a footnote, the Seventh Circuit cited *Mourning* generally for the proposition that "[t]he provisions of Regulation Z are afforded substantial weight." *Id.* at 493 n.9. So, although the court in *Muro* cited *Mourning*, Regulation Z was not under review, and even if it were, the court only looked to *Mourning* after the court had determined that Congress had been silent on the issue the court was concerned with. *Muro* in no way stands for the proposition that a court can avoid the *Chevron* framework in light of *Mourning*.

In sum, the *Chevron* framework requires the Court to begin its analysis with the plain language of the ECOA. Because the Court finds the ECOA unambiguously prohibits discrimination of "applicants," and not "prospective applicants," the Court does not assess Regulation B for the soundness of its policy, the need for it in the

---

[10]Because the Court does not reach *Chevron* step two, the CFPB's arguments about legislative history and the ineffectiveness of the ECOA without Regulation B's anti-discouragement provision, *see* Resp. at 4–5, 7–8, are inapposite. *Coyomani-Cielo v. Holder*, 758 F.3d 908, 914 (7th Cir. 2014) (holding legislative history is reserved for *Chevron*'s second step, in which court deferentially determines whether the agency's interpretation is reasonable).

statute, or even whether it is reasonably related to the ECOA's objectives. To be clear, the Court appreciates the expertise of the CFPB in implementing the ECOA and commends its attempts to prevent the deplorable practice of discouraging people, on the basis of race, from applying for credit. The practice of limiting credit to individuals based on criteria other than creditworthiness is as odious as it is offensive. However, the Court is duty-bound to follow precedent, which means the Court can only defer to an agency's interpretation of a statute, no matter how laudable its purpose, when it survives the two-step *Chevron* framework. The anti-discouragement provision of Regulation B with respect to "prospective applicants" does not survive *Chevron* step one, so the Court does not defer to the CFPB's interpretation.

Accordingly, the CFPB's ECOA count is dismissed. The dismissal is with prejudice because any amendment would be futile. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017). The CFPB cannot amend its pleading in a way that would change the language of the ECOA. Counts II and III, which are dependent on the CFPB's ECOA claim, *see* FAC ¶¶ 59–78, are likewise dismissed with prejudice.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss the FAC [31] and dismisses the FAC with prejudice. Civil case terminated.

Dated: February 3, 2023

_____
United States District Judge
Franklin U. Valderrama

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Bureau of Consumer Financial Protection,

Plaintiff(s),

v.

Townstone Financial, Inc. and Barry Sturner,

Defendant(s).

Case No.  20 C 4176
Judge Franklin U. Valderrama

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐     in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

        which ☐ includes     pre–judgment interest.
                ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒     in favor of defendant(s) Townstone Financial, Inc. and Barry Sturner.
and against plaintiff(s) Bureau of Consumer Financial Protection.

Defendant(s) shall recover costs from plaintiff(s).

---

☐     other:

---

This action was *(check one)*:

☐ tried by a jury with Judge     presiding, and the jury has rendered a verdict.
☐ tried by Judge     without a jury and the above decision was reached.
☒ decided by Judge Franklin U. Valderrama on a motion.

Date:  2/3/2023

Thomas G. Bruton, Clerk of Court

Analeah Charles, Deputy Clerk

APPEAL,CASREF,FUENTES,PROTO,TERMED

# United States District Court
# Northern District of Illinois - CM/ECF NextGen 1.7.1.1 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:20-cv-04176
# Internal Use Only

| | |
|---|---|
| Bureau of Consumer Financial Protection v. Townstone Financial, Inc. | Date Filed: 07/15/2020 |
| Assigned to: Honorable Franklin U. Valderrama | Date Terminated: 02/03/2023 |
| Cause: 28:1331 Federal Question: Other Civil Rights | Jury Demand: None |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

| | | |
|---|---|---|
| **Bureau of Consumer Financial Protection** | represented by | **Barry E Reiferson** |
| | | Bureau of Consumer Financial Protection |
| | | 1700 G Street, NW |
| | | Washington, DC 20552 |
| | | 212-328-7020 |
| | | Email: barry.reiferson@cfpb.gov |
| | | *TERMINATED: 09/12/2022* |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | |
| | | **Gregory Wood Jones** |
| | | Consumer Financial Protection Bureau |
| | | Enforcement |
| | | 230 S. Dearborn St. |
| | | Chicago, IL 60604 |
| | | 202-573-1372 |
| | | Email: gregory.jones@cfpb.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Vincent Paul Herman** |
| | | Bureau of Consumer Financial Protection |
| | | 1700 G Street, NW |
| | | Washington, DC 20552 |
| | | (202) 435-9599 |
| | | Email: vincent.herman@cfpb.gov |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jacob Alden Schunk** |
| | | Consumer Financial Protection Bureau |
| | | 1700 G Street NW |
| | | Washington, DC 20552 |

(202) 718-0394
Email: jacob.schunk@cfpb.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Sarah Bloom**
US Consumer Financial Protection Bureau
1700 G St NW
Washington, DC 20552
(202) 435-7012
Email: karen.bloom@cfpb.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Elizabeth Olson**
Consumer Financial Protection Bureau
230 S. Dearborn Street
Suite 1590
Chicago, IL 60604
312 610-8977
Email: Mary.Olson@cfpb.gov
*ATTORNEY TO BE NOTICED*

**Michael G. Salemi**
Consumer Financial Protection Bureau
Attn: Salemi Enforcement
1700 G Street NW
Washington, DC 20552
(202) 435-7751
Email: michael.salemi@cfpb.gov
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Townstone Financial, Inc.**     represented by **Sean Patrick Burke**
Mattingly Burke Cohen & Biederman LLP
155 E Market St.
Suite 400
Indianapolis, IN 46204
(317) 614-7324
Email: sean.burke@mbcblaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve Simpson**
Pacific Legal Foundation
3100 Clarendon Boulevard
Suite 1000
Arlington, VA 22201

916-775-6857
Email: ssimpson@pacificlegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*


**Elinam Brenda Kpotufe**
Mattingly Burke Cohen & Biederman Llp
155 East Market Street
Suite 400
Indianapolis, IN 46204
(317) 664-7094
Email: brenda.kpotufe@mbcblaw.com
*ATTORNEY TO BE NOTICED*


**Jessica Thompson**
Pacific Legal Foundation
3100 Clarendon Blvd. Suite 610
Arlington, VA 22201
(202) 888-6881
Email: jlthompson@pacificlegal.org
*ATTORNEY TO BE NOTICED*


**John F Kerkhoff**
Pacific Legal Foundation
3100 Clarendon Blvd.
Suite 610
Arlington, VA 22201
513-235-4509
Email: jkerkhoff@pacificlegal.org
*ATTORNEY TO BE NOTICED*


**Marx David Sterbcow**
Sterbcow Law Group, LLC
824 Elmwood Park Boulevard, Suite 205
New Orleans, LA 70123
5045234930
Email: marx@sterbcowlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*


**Oliver Dunford**
Pacific Legal Foundation
4440 Pga Blvd., Suite 307
Palm Beach Gardens, FL 33410
(916) 503-9060
Email: odunford@pacificlegal.org
*ATTORNEY TO BE NOTICED*


**Defendant**

**Barry Sturner**          represented by   **Steve Simpson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jessica Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John F Kerkhoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Oliver Dunford**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2020 | 5 | Fifth Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in-person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in-court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020. Mailed notice. (bg, ) (Entered: 07/16/2020) |
| 07/15/2020 | 1 | COMPLAINT filed by Bureau of Consumer Financial Protection; (Attachments: # 1 Exhibit)(Salemi, Michael) (Entered: 07/15/2020) |
| 07/15/2020 | 2 | CIVIL Cover Sheet (Salemi, Michael) (Entered: 07/15/2020) |
| 07/15/2020 | 3 | ATTORNEY Appearance for Plaintiff Bureau of Consumer Financial Protection by Michael G. Salemi (Salemi, Michael) (Entered: 07/15/2020) |
| 07/15/2020 | | CASE ASSIGNED to the Honorable Matthew F. Kennelly. Designated as Magistrate Judge the Honorable Gabriel A. Fuentes. Case assignment: Random assignment. (mp, ) (Entered: 07/15/2020) |
| 07/16/2020 | 4 | ATTORNEY Appearance for Plaintiff Bureau of Consumer Financial Protection by Mary Elizabeth Olson (Olson, Mary) (Entered: 07/16/2020) |
| 07/21/2020 | 6 | MOTION by Plaintiff Bureau of Consumer Financial Protection for leave to appear as Pro Hac Vice (Herman, Vincent) (Entered: 07/21/2020) |
| 07/21/2020 | 7 | MOTION by Plaintiff Bureau of Consumer Financial Protection for leave to appear as Pro Hac Vice (Reiferson, Barry) (Entered: 07/21/2020) |
| 07/21/2020 | 8 | NOTICE of Motion by Barry E Reiferson for presentment of motion for leave to appear 6 , motion for leave to appear 7 before Honorable Matthew F. Kennelly on 7/28/2020 at 09:30 AM. (Reiferson, Barry) (Entered: 07/21/2020) |

| | | |
|---|---|---|
| 07/22/2020 | 9 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion of Vincent Herman 6 and Barry Reiferson 7 to appear pro hac vice are granted. (mk) (Entered: 07/22/2020) |
| 07/22/2020 | 10 | ATTORNEY Appearance for Plaintiff Bureau of Consumer Financial Protection by Vincent Paul Herman (Herman, Vincent) (Entered: 07/22/2020) |
| 07/22/2020 | 11 | ATTORNEY Appearance for Plaintiff Bureau of Consumer Financial Protection by Barry E Reiferson (Reiferson, Barry) (Entered: 07/22/2020) |
| 08/17/2020 | 12 | WAIVER OF SERVICE returned executed by Bureau of Consumer Financial Protection. Townstone Financial, Inc. waiver sent on 8/10/2020, answer due 10/9/2020. (Reiferson, Barry) (Entered: 08/17/2020) |
| 09/22/2020 | 13 | ATTORNEY Appearance for Defendant Townstone Financial, Inc. by Sean Patrick Burke (Burke, Sean) (Entered: 09/22/2020) |
| 09/28/2020 | 14 | EXECUTIVE COMMITTEE ORDER: GENERAL ORDER 20-0027: Pursuant that to the Executive Committee Order entered on September 23, 2020 the civil cases on the attached list have been selected for reassignment to form the initial calendar of the Honorable Franklin U. Valderrama; therefore IT IS HEREBY ORDERED that the attached list of 371 cases is reassigned to the Honorable Franklin U. Valderrama; and IT IS FURTHER ORDERED that all parties affected by this Order must review the Honorable Franklin U. Valderrama's webpage on the Court's website for the purpose of reviewing instructions regarding scheduling and case management procedures; and IT IS FURTHER ORDERED that any civil case that has been reassigned pursuant to this Order will not be randomly reassigned to create the initial calendar of a new district judge for twelve months from the date of this Order; and IT IS FURTHER ORDERED that the Clerk of Court is directed to add the Honorable Franklin U. Valderrama to the Court's civil case assignment system during the next business day, so that he shall receive a full share of such cases. Case reassigned to the Honorable Franklin U. Valderrama for all further proceedings. Honorable Matthew F. Kennelly no longer assigned to the case. Signed by Honorable Rebecca R. Pallmeyer on 9/28/2020.(Clerk6, Docket) (Entered: 09/28/2020) |
| 10/05/2020 | 15 | MOTION by Defendant Townstone Financial, Inc. for extension of time to file answer regarding complaint 1 (Burke, Sean) (Entered: 10/05/2020) |
| 10/06/2020 | 16 | MINUTE entry before the Honorable Franklin U. Valderrama: Defendant's uncontested motion for extension of time 15 is granted. Defendant's responsive pleading due on or before 10/23/2020. Mailed notice (cn). (Entered: 10/06/2020) |
| 10/06/2020 | 17 | ATTORNEY Appearance for Defendant Townstone Financial, Inc. by Elinam Brenda Kpotufe (Kpotufe, Elinam) (Entered: 10/06/2020) |
| 10/20/2020 | 18 | MOTION by Defendant Townstone Financial, Inc. for leave to file excess pages *in their memorandum in support of motion to dismiss Plaintiff's complaint* (Kpotufe, Elinam) (Entered: 10/20/2020) |
| 10/21/2020 | 19 | MINUTE entry before the Honorable Franklin U. Valderrama: Defendant's unopposed motion for leave to exceed page limits related to their motion to dismiss plaintiff's complaint 18 is granted. Defendant has leave to file a memorandum up to 20 pages in support of their motion to dismiss. Mailed notice (cn). (Entered: 10/21/2020) |

| 10/23/2020 | 20 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-17572246. (Sterbcow, Marx) (Entered: 10/23/2020) |
|---|---|---|
| 10/23/2020 | 21 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Townstone Financial, Inc. (Burke, Sean) (Entered: 10/23/2020) |
| 10/23/2020 | 22 | MEMORANDUM by Townstone Financial, Inc. in support of Motion to Dismiss for Failure to State a Claim 21 (Burke, Sean) (Entered: 10/23/2020) |
| 10/26/2020 | 23 | MINUTE entry before the Honorable Franklin U. Valderrama: Attorney Marx David Sterbcow's motion for leave to appear pro hac vice 20 is granted. Mailed notice (axc). (Entered: 10/26/2020) |
| 10/26/2020 | 24 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court sets the following briefing schedule on defendant's motion to dismiss 21 : plaintiff's response due on or before 11/16/2020; defendant's reply due on or before 11/23/2020. Telephonic status hearing set for 1/21/2021 at 9:45 a.m. The call-in number is (888) 808-6929 and the access code is 5348076. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (axc). (Entered: 10/26/2020) |
| 10/30/2020 | 25 | MOTION by Plaintiff Bureau of Consumer Financial Protection for extension of time to file response/reply as to Motion to Dismiss for Failure to State a Claim 21 , MOTION by Plaintiff Bureau of Consumer Financial Protection for leave to file excess pages (Reiferson, Barry) (Entered: 10/30/2020) |
| 11/02/2020 | 26 | MINUTE entry before the Honorable Franklin U. Valderrama: Uncontested motion for extension of time and for leave to exceed page limit 25 is granted. Plaintiff's response to the motion to dismiss or amended complaint due on or before 11/25/2020. Plaintiff has leave to file a response brief of up to 25 pages. Defendant's reply if necessary due by 12/16/2020. If plaintiff files an amended complaint, defendant's responsive pleading due by 1/15/2021. Telephonic status hearing set for 1/21/2021 is stricken and reset to 2/17/2021 at 9:30 a.m. The call-in number is (888) 808-6929 and the access code is 5348076. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Replies due by 12/16/2020. Telephone Conference set for 2/17/2021 at09:30 AM. Mailed notice (axc). (Entered: 11/02/2020) |
| 11/25/2020 | 27 | AMENDED complaint by Bureau of Consumer Financial Protection against Townstone Financial, Inc., Barry Sturner (Reiferson, Barry) (Entered: 11/25/2020) |
| 12/21/2020 | 28 | WAIVER OF SERVICE returned executed by Bureau of Consumer Financial Protection. Barry Sturner waiver sent on 12/8/2020, answer due 2/8/2021. (Reiferson, Barry) (Entered: 12/21/2020) |

| 01/08/2021 | 29 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for extension of time *(Joint)*, MOTION by Defendants Barry Sturner, Townstone Financial, Inc. leave to exceed the page limits *(Joint)* (Burke, Sean) (Entered: 01/08/2021) |
|---|---|---|
| 01/11/2021 | 30 | MINUTE entry before the Honorable Franklin U. Valderrama: The parties' joint motion for extension of time and for leave to exceed page limits for consolidated briefing on motions to dismiss 29 . The motion is granted as follows: the briefing schedules set by 24 and 26 are hereby stricken; the parties will adhere to a consolidated briefing schedule on the defendants' forthcoming motion to dismiss; defendants' consolidated motion to dismiss due on or before 2/8/2021; Bureau's consolidated response due on or before 3/1/2021; defendants' reply due on or before 3/11/2021; defendants' memorandum in support of their consolidated motion to dismiss may be up to 25 pages; Bureau's consolidated response may be up to 30 pages; defendants' consolidated reply may be up to 10 pages. Telephonic status hearing set on 2/17/2021 at 9:30 a.m. is hereby stricken. Status hearing set for 5/4/2021 at 9:30 a.m. but to track the case only (no appearance is required; the case will not be called). Mailed notice (axc). (Entered: 01/11/2021) |
| 02/08/2021 | 31 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Barry Sturner, Townstone Financial, Inc. (Burke, Sean) (Entered: 02/08/2021) |
| 02/08/2021 | 32 | MEMORANDUM by Barry Sturner, Townstone Financial, Inc. in support of Motion to Dismiss for Failure to State a Claim 31 (Burke, Sean) (Entered: 02/08/2021) |
| 02/25/2021 | 33 | MOTION by Plaintiff Bureau of Consumer Financial Protection for extension of time to file response/reply as to Motion to Dismiss for Failure to State a Claim 31 *(Unopposed Motion)* (Reiferson, Barry) (Entered: 02/25/2021) |
| 02/26/2021 | 34 | MINUTE entry before the Honorable Franklin U. Valderrama: The unopposed motion for extension of time to respond and reply to motion to dismiss 33 is granted. The briefing scheduling set forth on 1/11/2021 30 is modified as follows: Bureau's consolidated response due on or before 3/15/2021; defendants' reply due on or before 3/29/2021. Status hearing set for 5/4/2021 is stricken and reset to 5/27/2021 at 9:30 a.m. but to track the case only (no appearance is required; the case will not be called). Mailed notice (axc). (Entered: 02/26/2021) |
| 03/15/2021 | 35 | RESPONSE by Bureau of Consumer Financial Protectionin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Barry Sturner, Townstone Financial, Inc. 31 (Reiferson, Barry) (Entered: 03/15/2021) |
| 03/24/2021 | 36 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for extension of time to file response/reply *to Plaintiff's Opposition to Motion to Dismiss*, MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for leave to file excess pages (Kpotufe, Elinam) (Entered: 03/24/2021) |
| 03/25/2021 | 37 | MINUTE entry before the Honorable Franklin U. Valderrama: Defendants' unopposed motion for extension of time and for leave to exceed page limits for reply to plaintiff's opposition to motion to dismiss 36 is granted. Defendants' are hereby granted leave to exceed the page limit by 3 pages, up to and including 13 pages total, for their consolidated reply. The briefing schedule entered on 2/26/2021 34 is modified as follows: defendants' reply due on or before 4/12/2021. Status hearing set for 5/27/2021 is stricken and reset to 6/10/2021 at 9:30 a.m. but to track |

| | | |
|---|---|---|
| | | the case only (no appearance is required; the case will not be called) Mailed notice (axc). (Entered: 03/25/2021) |
| 04/12/2021 | 38 | REPLY by Barry Sturner, Townstone Financial, Inc. to response in opposition to motion 35 *to dismiss Plaintiff's Complaint* (Burke, Sean) (Entered: 04/12/2021) |
| 06/04/2021 | 39 | MINUTE entry before the Honorable Franklin U. Valderrama: Tracking status set for 6/10/2021 is stricken. The Court will rule on Defendant Townstone Financial, Inc.'s Motion to Dismiss Plaintiff's Complaint 21 and Defendants' Combined Motion to Dismiss Plaintiff's Complaint 31 via CM/ECF. Mailed notice (axc). (Entered: 06/04/2021) |
| 11/23/2021 | 40 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for extension of time to file *Report from Rule 26(f) Conference* (Burke, Sean) (Entered: 11/23/2021) |
| 11/29/2021 | 41 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated in Defendants' Unopposed Motion to Extend Time 40 , the motion is granted. The deadline for the parties to file their Rule 26(f) report is extended to 12/27/2021. Mailed notice (axc). (Entered: 11/29/2021) |
| 12/20/2021 | 42 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for extension of time *to File Report From Rule 26(f) Conference* (Burke, Sean) (Entered: 12/20/2021) |
| 12/22/2021 | 43 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated in the motion, Defendants' Unopposed Motion to Extend Time 42 is granted. The deadline for the parties to file their Rule 26(f) report is extended to 01/26/2022. Defendant's Motion to Dismiss 21 is further stricken as moot in light of the filing of the Amended Complaint 27 . The Court refers discovery supervision, including setting all deadlines, and settlement matters to Magistrate Judge Fuentes. The Court anticipates discovery will continue while Defendant's Motion to Dismiss the Amended Complaint 31 is pending. If the parties request a stay of discovery, they are to bring that motion before the District Court Judge. Without a stay, it is expected that discovery work will continue. Mailed notice (axc). (Entered: 12/22/2021) |
| 12/22/2021 | 44 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Gabriel A. Fuentes for the purpose of holding proceedings related to: discovery supervision, including setting all deadlines, and settlement matters. (axc) Mailed notice. (Entered: 12/22/2021) |
| 12/22/2021 | 45 | MINUTE entry before the Honorable Gabriel A. Fuentes: This matter coming before the magistrate judge on referral for discovery supervision and settlement (doc. # 44 ), the Court directs the parties to include in their written status report due on 1/26/22 the status of their settlement discussions and a proposed schedule for written and oral discovery. Meanwhile, the Court refers the parties to the Court's Standing Order for Civil Cases Before Magistrate Judge Fuentes, the Standing Order for Settlement Conferences, and the Top Ten Ways to Defeat Settlement, all available on the Court's website. Mailed notice (dal, ) (Entered: 12/22/2021) |
| 01/25/2022 | 46 | MINUTE entry before the Honorable Gabriel A. Fuentes: The Court has received notice by email of the parties having reached an agreement in principle to settle the matter, with a plan to submit a proposed judgment and order within 14 days. Accordingly, the 1/26/22 status report date is vacated and reset to 2/25/22 and will be vacated if the matter is fully resolved by then. Mailed notice. (jj, ) (Entered: |

| | | |
|---|---|---|
| | | 01/25/2022) |
| 02/24/2022 | 47 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for extension of time *to File Status Report* (Burke, Sean) (Entered: 02/24/2022) |
| 02/25/2022 | 48 | MINUTE entry before the Honorable Gabriel A. Fuentes: The Court grants the parties' joint motion (doc. # 47 ) to continue the status report due date from today to noon on 3/4/22. Mailed notice. (jj, ) (Entered: 02/25/2022) |
| 03/03/2022 | 49 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for extension of time *to File Status Report* (Burke, Sean) (Entered: 03/03/2022) |
| 03/03/2022 | 50 | MINUTE entry before the Honorable Gabriel A. Fuentes: Defendant's agreed motion to extend the time for their status report on finalization of settlement (doc. # 49 ) is granted, and the next status report is due and to be filed by noon on 3/18/22, but the parties are strongly encouraged to use that time to focus on completing the settlement, and not obtaining pro bono litigation counsel if the settlement does not materialize. If there is no settlement, the matter will return to the uncertainty of the litigation portal and may ask the Court for whatever time they think they need to find more lawyers and spend more resources on litigation. Mailed notice. (jj, ) (Entered: 03/03/2022) |
| 03/18/2022 | 51 | STATUS Report *(Joint)* by Barry Sturner, Townstone Financial, Inc. (Burke, Sean) (Entered: 03/18/2022) |
| 03/18/2022 | 52 | MINUTE entry before the Honorable Gabriel A. Fuentes: With the parties in the joint status report (doc. # 51 ) disclosing to the Court that the settlement in principle, previously reached, is now off and could not be finalized, discovery will proceed. The parties are ordered to engage in a Rule 26(f) conference by close of business on 3/25/22, and they shall file a joint status report disclosing an agreed or contested schedule for fact and expert discovery no later than noon on 4/1/22. The Court expects that Rule 26(a)(1) disclosures will be due to be served 14 days after the Rule 26(f) conference. Mailed notice (lp, ) (Entered: 03/18/2022) |
| 03/23/2022 | 53 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for extension of time *to extend the deadlines established by the Court's March 18, 2022 Order* (Burke, Sean) (Entered: 03/23/2022) |
| 03/24/2022 | 54 | ATTORNEY Appearance for Defendants Barry Sturner, Townstone Financial, Inc. by Jessica Thompson (Thompson, Jessica) (Entered: 03/24/2022) |
| 03/24/2022 | 55 | ATTORNEY Appearance for Defendants Barry Sturner, Townstone Financial, Inc. by Steve Simpson (Simpson, Steve) (Entered: 03/24/2022) |
| 03/24/2022 | 56 | MINUTE entry before the Honorable Gabriel A. Fuentes: Defendant's unopposed motion for a two-week extension of the discovery schedule after failed settlement efforts (doc. # 53 ) is granted in view of new counsel's entry into the case. By agreement, Rule 26(f) conference is to occur on or before 4/8/22, the joint Rule 26(f) status report is due and to be filed by noon on 4/22/22 and not 4/1/22, and Rule 26(a)(1) disclosures are to be served by no later than 4/22/22.Mailed notice. (jj, ) (Entered: 03/24/2022) |
| 03/28/2022 | 57 | ATTORNEY Appearance for Defendants Barry Sturner, Townstone Financial, Inc. by Oliver Dunford (Dunford, Oliver) (Entered: 03/28/2022) |

| 04/18/2022 | 58 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19351472. (Schunk, Jacob) (Entered: 04/18/2022) |
|---|---|---|
| 04/18/2022 | 59 | REQUEST for Clerk of Court to refund filing fee in the amount of $150, receipt no. 0752-19351472, regarding motion to appear pro hac vice 58 (Schunk, Jacob) (Entered: 04/18/2022) |
| 04/21/2022 | 60 | MINUTE entry before the Honorable Franklin U. Valderrama: Attorney Jacob A. Schunk's motion for leave to appear pro hac vice 58 is granted. Mailed notice (axc). (Entered: 04/21/2022) |
| 04/22/2022 | 61 | ATTORNEY Appearance for Plaintiff Bureau of Consumer Financial Protection by Jacob Alden Schunk (Schunk, Jacob) (Entered: 04/22/2022) |
| 04/22/2022 | 62 | REPORT of Rule 26(f) Planning Meeting by Bureau of Consumer Financial Protection (Schunk, Jacob) (Entered: 04/22/2022) |
| 04/22/2022 | 63 | REFUND PROCESSED to attorney Jacob Schunk in the amount of $150, receipt no. 0752-19351472, regarding motion to appear pro hac vice 58 due to filing on behalf of a federal agency. (sm, ) (Entered: 04/22/2022) |
| 04/26/2022 | 64 | MINUTE entry before the Honorable Gabriel A. Fuentes: On review of the parties' Rule 26(f) report (doc. # 62 ), the Court orders the following under the discovery referral: (1) service of Rule 26(a)(1) disclosures is presumed to have taken place on 4/22/22 as proposed, and if it has not, the disclosures should be served forthwith; (2) initial written discovery requests are to be served by no later than 5/6/22, with responses due per the rules or by agreement; and (3) fact discovery is to be completed by no later than 12/23/22 as proposed. On expert discovery, certain of the parties' proposed time frames between expert disclosures and depositions are too long. Plaintiff's expert disclosures are due to be served on 1/27/23 as proposed, but those depositions are to be concluded by 3/31/23. Defendant's expert disclosures are due to be served by no later than 3/3/23, with those experts deposed by no later than 5/5/23. All discovery is therefore closed on 5/5/23, and this schedule should be considered firm. This is a 2020 case in which both sides have had ample time to consider the subject matter and witness candidates with respect to expert testimony; considerable time was spent on settlement, and that is commendable, but now that settlement is not in the offing, the parties have opted for the litigation train, and it is moving, and it will pick up speed. If at any time the parties wish to discuss settlement with the magistrate judge, they should feel free to contact the courtroom deputy, Jenny Jauregui, at 312-818-6514. The parties may address deadlines for amended pleadings and dispositive motions with the district court. Mailed notice. (jj, ) (Entered: 04/26/2022) |
| 07/08/2022 | 65 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for leave to file *Notice of Supplemental Authority* (Simpson, Steve) (Entered: 07/08/2022) |
| 07/11/2022 | 66 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated in the motion, the Court grants Defendants' motion for leave to file notice of supplemental authority 65 . Defendants shall file their notice of supplemental authority on or before 07/25/2022; Plaintiff shall file a response on or before 08/08/2022. Mailed notice (axc). (Entered: 07/11/2022) |
| 07/25/2022 | 67 | MEMORANDUM by Barry Sturner, Townstone Financial, Inc. *re Supplemental Authority (ECF Nos. 65 and 66)* (Simpson, Steve) (Entered: 07/25/2022) |

| | | |
|---|---|---|
| 07/27/2022 | 68 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court sets an In-Person motion hearing on Defendants' Combined Motion to Dismiss Plaintiff's Complaint 31 for 08/10/2022 at 10:00 a.m. The hearing will be held in Judge Valderrama's Courtroom 1219. Mailed notice (axc). (Entered: 07/27/2022) |
| 08/04/2022 | 69 | MOTION by Plaintiff Bureau of Consumer Financial Protection for Leave to Appear Pro Hac Vice (Bloom, Karen) (Entered: 08/04/2022) |
| 08/05/2022 | 70 | Amended Motion for Leave to Appear Pro Hac Vice by Bureau of Consumer Financial Protection (Bloom, Karen) (Entered: 08/05/2022) |
| 08/08/2022 | 71 | RESPONSE by Plaintiff Bureau of Consumer Financial Protection to memorandum 67 (Reiferson, Barry) (Entered: 08/08/2022) |
| 08/09/2022 | 72 | MINUTE entry before the Honorable Franklin U. Valderrama: Attorney Karen S. Bloom's amended motion for leave to appear pro hac vice 70 is granted. Mailed notice (axc). (Entered: 08/09/2022) |
| 08/09/2022 | 73 | ATTORNEY Appearance for Plaintiff Bureau of Consumer Financial Protection by Karen Sarah Bloom (Bloom, Karen) (Entered: 08/09/2022) |
| 08/11/2022 | 74 | MINUTE entry before the Honorable Franklin U. Valderrama: In-Person Motion Hearing held on 08/10/2022 on Defendants' Combined Motion to Dismiss Plaintiff's Complaint 31 . The Court will issue an opinion on the motion via CM/ECF. Mailed notice (axc). (Entered: 08/11/2022) |
| 09/09/2022 | 75 | MOTION by Attorney Barry Reiferson to withdraw as attorney for Bureau of Consumer Financial Protection. No party information provided (Reiferson, Barry) (Entered: 09/09/2022) |
| 09/12/2022 | 76 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated in the motion, the Court grants Barry E. Reiferson's Motion to Withdraw 75 . Attorney Barry E. Reiferson, is withdrawn as counsel for Plaintiff, Bureau of Consumer Financial Protection. Mailed notice (axc). (Entered: 09/12/2022) |
| 09/16/2022 | 77 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. to stay *discovery* (Simpson, Steve) (Entered: 09/16/2022) |
| 09/16/2022 | 78 | MEMORANDUM by Barry Sturner, Townstone Financial, Inc. in support of motion to stay 77 *discovery.* (Simpson, Steve) (Entered: 09/16/2022) |
| 09/19/2022 | 79 | MINUTE entry before the Honorable Gabriel A. Fuentes: On defendants' motion to stay discovery (doc. # 77 ), the magistrate defers action to the district court, which reserved the authority to decide discovery stay motion in this matter (doc. # 43 ). Mailed notice. (jj, ) (Entered: 09/19/2022) |
| 09/20/2022 | 80 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court enters the following briefing schedule on Defendant's motion to stay discovery 77 : Plaintiff's response is due on or before 10/11/2022; Defendants' reply is due on or before 10/25/2022. Mailed notice (axc). (Entered: 09/20/2022) |
| 09/27/2022 | 81 | ATTORNEY Appearance for Plaintiff Bureau of Consumer Financial Protection by Gregory Wood Jones (Jones, Gregory) (Entered: 09/27/2022) |

| | | |
|---|---|---|
| 10/11/2022 | 82 | RESPONSE by Bureau of Consumer Financial Protection in Opposition to MOTION by Defendants Barry Sturner, Townstone Financial, Inc. to stay *discovery* 77 (Schunk, Jacob) (Entered: 10/11/2022) |
| 10/25/2022 | 83 | REPLY by Defendants Barry Sturner, Townstone Financial, Inc. (Simpson, Steve) (Entered: 10/25/2022) |
| 10/31/2022 | 84 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. for order *Entry of Agreed Confidentiality Order* (Simpson, Steve) (Entered: 10/31/2022) |
| 10/31/2022 | 85 | MINUTE entry before the Honorable Gabriel A. Fuentes: The parties' joint motion for entry of an Agreed Confidentiality Order (doc. #84) is granted. Enter Agreed Confidentiality Order. Mailed notice (lxs, ) (Entered: 10/31/2022) |
| 10/31/2022 | 86 | AGREED Confidentiality Order. Signed by the Honorable Gabriel A. Fuentes on 10/31/2022. Mailed notice(lxs, ) (Entered: 10/31/2022) |
| 11/14/2022 | 87 | MOTION by Plaintiff Bureau of Consumer Financial Protection to compel (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Jones, Gregory) (Entered: 11/14/2022) |
| 11/14/2022 | 88 | MINUTE entry before the Honorable Gabriel A. Fuentes: On plaintiff's motion to compel (doc. # 87 ), a telephonic motion hearing is set for 3 p.m. on 11/16/22. The parties should be prepared to argue the motion at that time. The call-in number is (888) 684-8852 and the access code is 2006804. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Participants are further directed to keep their devices muted when they are not speaking. Mailed notice. (jj, ) (Entered: 11/14/2022) |
| 11/14/2022 | 89 | MOTION by Defendants Barry Sturner, Townstone Financial, Inc. to compel *discovery responses* (Attachments: # 1 Exhibit A - CFPB Response to Rog No. 2, # 2 Exhibit B - Letter to CFPB, Aug. 23, 2022, # 3 Exhibit C - D. RFP 34-38, 41, 42, # 4 Exhibit D - CFPB Responses, June 10, 2022, # 5 Exhibit E - Letter to CFPB, Oct. 10, 2022, # 6 Exhibit F - Letter to CFPB, Nov. 3, 2022, # 7 Declaration of Barry Sturner)(Simpson, Steve) (Entered: 11/14/2022) |
| 11/14/2022 | 90 | MEMORANDUM by Barry Sturner, Townstone Financial, Inc. in support of motion to compel, 89 (Simpson, Steve) (Entered: 11/14/2022) |
| 11/15/2022 | 91 | MINUTE entry before the Honorable Gabriel A. Fuentes: Upon filing of defendants' motion to compel (doc. # 89 ), the telephonic motion hearing set for 3 p.m. on 11/16/22 (doc. # 88 ) stands and is expanded to include defendants' motion to compel. Mailed notice. (kl, ) (Entered: 11/15/2022) |
| 11/15/2022 | 92 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court refers Defendants' motion to stay discovery 77 to Magistrate Judge Fuentes. Mailed notice (axc). (Entered: 11/15/2022) |
| 11/16/2022 | 93 | MINUTE entry before the Honorable Gabriel A. Fuentes: Telephonic motion hearing held on plaintiff's motion to compel (doc. # 87 ) and defendants' motion to compel (doc. # 89 ). The Court determined that further briefing of these motions by agreement is appropriate. The defense response to plaintiff's motion to compel, and plaintiff's response to defendants' motion to compel, are due by 5 p.m. on 11/23/22. Replies in support of the respective motions to compel are due from each movant by |

|  |  | 5 p.m. on 12/2/22. The Court will issue a further order upon review of the briefing. Mailed notice. (kl, ) (Entered: 11/16/2022) |
|---|---|---|
| 11/18/2022 | 94 | ATTORNEY Appearance for Defendants Barry Sturner, Townstone Financial, Inc. by John F Kerkhoff (Kerkhoff, John) (Entered: 11/18/2022) |
| 11/18/2022 | 95 | MOTION by Plaintiff Bureau of Consumer Financial Protection for extension of time to file response/reply as to motion to compel 87 , motion hearing,,, set motion and R&R deadlines/hearings,, 93 , motion to compel, 89 *(Joint Motion)* (Schunk, Jacob) (Entered: 11/18/2022) |
| 11/18/2022 | 96 | MINUTE entry before the Honorable Gabriel A. Fuentes: The parties' joint motion for an extension of time to brief their respective motions to compel (doc. #95) is granted. Respective responses to the motions to compel are due by 5 p.m. on 11/30/22, and the respective replies are due by 5 p.m. on 12/7/22. Mailed notice. (kl, ) (Entered: 11/18/2022) |
| 11/22/2022 | 97 | MOTION by Plaintiff Bureau of Consumer Financial Protection for extension of time to complete discovery *(Joint Motion)* (Schunk, Jacob) (Entered: 11/22/2022) |
| 11/23/2022 | 98 | MINUTE entry before the Honorable Gabriel A. Fuentes: The parties' joint motion to extend the discovery schedule (doc. # 97 ) is taken under advisement along with the pending motion to stay discovery. Mailed notice. (lxk, ) (Entered: 11/23/2022) |
| 11/30/2022 | 99 | RESPONSE by Bureau of Consumer Financial Protectionin Opposition to MOTION by Defendants Barry Sturner, Townstone Financial, Inc. to compel *discovery responses* 89 (Schunk, Jacob) (Entered: 11/30/2022) |
| 11/30/2022 | 100 | RESPONSE by Barry Sturner, Townstone Financial, Inc. to MOTION by Plaintiff Bureau of Consumer Financial Protection to compel 87 (Attachments: # 1 Exhibit Declaration)(Simpson, Steve) (Entered: 11/30/2022) |
| 12/07/2022 | 101 | REPLY by Bureau of Consumer Financial Protection to MOTION by Plaintiff Bureau of Consumer Financial Protection to compel 87 , response to motion 100 (Jones, Gregory) (Entered: 12/07/2022) |
| 12/07/2022 | 102 | RESPONSE by Barry Sturner, Townstone Financial, Inc.in Support of MOTION by Defendants Barry Sturner, Townstone Financial, Inc. to compel *discovery responses* 89 (Attachments: # 1 Exhibit)(Simpson, Steve) (Entered: 12/07/2022) |
| 12/12/2022 | 103 | MINUTE entry before the Honorable Gabriel A. Fuentes: Defendants' motion to stay discovery (doc. # 77 ) is denied, the CFPB motion to compel discovery (doc. # 87 ) and the defendants' motion to compel discovery (doc. # 89 ) are partially denied and partially granted, and the motion to extend the discovery schedule (doc. # 97 ) is granted, all as stated and for the reasons stated in the accompanying order. Enter Order. The new discovery schedule is as follows: (1) the fact discovery cutoff is 2/28/23, (2) Rule 26(a)(2) expert reports are due to be served by CFPB no later than 5 p.m. on 3/24/23 and by defendants no later than 5 p.m. on 4/28/23, and (3) expert depositions are to be completed no later than 5/26/23 for CFPB's experts and 6/30/23 for defendants' experts, with all discovery closing on 6/30/23. The parties should consider this schedule firm. A joint written status report on the anticipated closure of fact discovery is due by noon on 2/23/23. Mailed notice. (lxk, ) (Entered: 12/12/2022) |

| | | |
|---|---|---|
| 12/12/2022 | 104 | ORDER Signed by the Honorable Gabriel A. Fuentes on 12/12/2022. Mailed notice. (lxk, ) (Entered: 12/12/2022) |
| 12/27/2022 | 105 | OBJECTIONS by Barry Sturner, Townstone Financial, Inc. to order 104 (Simpson, Steve) (Entered: 12/27/2022) |
| 12/29/2022 | 106 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court sets the following briefing schedule on Defendants' rule 72(a) objection to the magistrate's order 105 : Plaintiff's response due on or before 01/11/2023; Defendants' reply due on or before 01/18/2023. Emailed notice (axc). (Entered: 12/29/2022) |
| 01/03/2023 | 107 | MINUTE entry before the Honorable Gabriel A. Fuentes: Defendants have filed a Rule 72(a) objection (doc. # 105 ) to the Court's 12/12/22 order (doc. # 104 ) with the district judge, and the parties are currently litigating the objection in the ordinary course under the district court's briefing schedule (doc. #106). Upon further consideration, the magistrate judge views defendants' objection to the Court's refusal to compel responses to Document Request No. 41, which called on plaintiff to produce documents "concerning the political leaning, political viewpoints, or social commentary of Townstone and/or Townstone's staff," as well-taken on the ground that the Request No. 41 is directed at documents, if any exist, concerning the CFPB's consideration of defendants' political leanings, and not documents concerning the political leanings of CFPB staff members themselves. The foregoing is provided for the district court's information. The parties are directed to file a status report within three days of the district court's decision on defendants' Rule 72(a) objection. Mailed notice. (lxk, ) (Entered: 01/03/2023) |
| 01/11/2023 | 108 | RESPONSE by Plaintiff Bureau of Consumer Financial Protection to objections 105 (Schunk, Jacob) (Entered: 01/11/2023) |
| 01/18/2023 | 109 | REPLY by Defendants Barry Sturner, Townstone Financial, Inc. to objections 105 (Simpson, Steve) (Entered: 01/18/2023) |
| 02/03/2023 | 110 | MEMORANDUM Opinion and Order: For the reasons in the accompanying Opinion, the Court grants Defendants' motion to dismiss 31 and dismisses the first amended complaint with prejudice. Civil case terminated. Signed by the Honorable Franklin U. Valderrama on 2/3/2023. Emailed notice (axc). (Entered: 02/03/2023) |
| 02/03/2023 | 111 | ENTERED JUDGMENT on 2/3/2023. Emailed notice (axc) (Entered: 02/03/2023) |
| 02/03/2023 | 112 | MINUTE entry before the Honorable Gabriel A. Fuentes: The district court having granted defendants' motion to dismiss and having entered judgment in the case (doc. #s 110, 111 ) and with failed settlement efforts (doc. #52), the referral is terminated. The discovery schedule and status report deadline of 2/23/23 are vacated. Judge Honorable Gabriel A. Fuentes no longer referred to the case. Mailed notice. (lxk, ) (Entered: 02/03/2023) |
| 04/03/2023 | 113 | NOTICE of appeal by Bureau of Consumer Financial Protection regarding orders 110 , 111 Receipt number: y (Schunk, Jacob) (Entered: 04/03/2023) |
| 04/03/2023 | 114 | DOCKETING Statement by Bureau of Consumer Financial Protection regarding notice of appeal 113 (Schunk, Jacob) (Entered: 04/03/2023) |
| 04/04/2023 | 115 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 113 (axk, ) (Entered: 04/04/2023) |