IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br>                      *Plaintiff*,<br><br>              v.<br><br>TOWNSTONE FINANCIAL, INC. AND BARRY STURNER,<br>                      *Defendants*. | Case No. 1:20-cv-04176<br><br>Judge Franklin U. Valderrama<br>Magistrate Judge Heather K. McShain |

**MEMORANDUM OF AMICI CURIAE
NATIONAL FAIR HOUSING ALLIANCE, PUBLIC CITIZEN,
THE AMERICAN CIVIL LIBERTIES UNION, ACLU OF ILLINOIS, BETTER
MARKETS, CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS, CONSUMER
FEDERATION OF AMERICA, FAIR HOUSING CENTER OF CENTRAL INDIANA,
HOPE FAIR HOUSING CENTER, METROPOLITAN MILWAUKEE FAIR HOUSING
COUNCIL, NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, NATIONAL
CONSUMER LAW CENTER, OPEN COMMUNITIES, AND SOUTH SUBURBAN
HOUSING CENTER IN OPPOSITION TO JOINT MOTION FOR RELIEF FROM AND
VACATUR OF STIPULATED FINAL JUDGMENT AND ORDER**

 Joshua Karsh
Mehri & Skalet PLLC
1237 Judson Ave.
Evanston, IL 60202
(773) 505-7533
jkarsh@findjustice.com
ARDC No. 6203096

Karla Gilbride
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

April 4, 2025                                        *Attorneys for Amici Curiae*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

Interest of Amici Curiae............................................................................................................1

Introduction...............................................................................................................................1

Background ...............................................................................................................................3

Argument ..................................................................................................................................4

I.   Rule 60(b)(6) does not apply here. ...................................................................................5

II.  Rules 60(b)(1)–(5) do not apply here. ..............................................................................7

III. The unprecedented relief sought here would create perverse incentives and harm the
     public interest. ................................................................................................................10

Conclusion ..............................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*Ackermann v. United States*,
    340 U.S. 193 (1950) ............................................................................................................. 7

*Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*,
    570 F.3d 845 (7th Cir. 2009) ............................................................................................ 2, 5

*Banks v. Chicago Board of Education*,
    750 F.3d 663 (7th Cir. 2014) ............................................................................................... 5

*Bell v. Eastman Kodak Co.*,
    214 F.3d 798 (7th Cir. 2000) ............................................................................................... 1

*Cartwright v. American Savings & Loan Ass'n*,
    880 F.2d 912 (7th Cir. 1989) ............................................................................................... 3

*CFPB v. Townstone Financial, Inc.*,
    2023 WL 1766484 (N.D. Ill. Feb. 3, 2023) ......................................................................... 4

*CFPB v. Townstone Financial, Inc.*,
    107 F.4th 768 (7th Cir. 2024) ................................................................................. 3, 4, 7, 9

*Clapprott v. United States*,
    335 U.S. 601 (1949) ............................................................................................................. 5

*Cummins v. Illinois*,
    2010 WL 334514 (S.D. Ill. Jan. 25, 2010) ........................................................................... 6

*Gonzalez v. Crosby*,
    545 US. 524 (2005) .......................................................................................................... 1, 5

*Kemp v. United States*,
    596 U.S. 528 (2022) .......................................................................................................... 5, 7

*Marcus A.T. v. Commissioner of Social Security*,
    2023 WL 3304727 (S.D. Ill. May 8, 2023) ......................................................................... 6

*Mayes v. City of Hammond, Indiana*,
    631 F. Supp. 2d 1082 (N.D. Ind. 2008),
    *adopted*, 2008 WL 4099699 (N.D. Ind. Sept. 2, 2008) ....................................................... 6

*Mendez v. Republic Bank*,
　725 F.3d 651 (7th Cir. 2013) .................................................................................................. 1, 5

*Orlowski v. Eriksen*,
　2010 WL 2401938 (N.D. Ill. June 10, 2010) .............................................................................. 6

*Pearson v. Target Corp.*,
　893 F.3d 980 (7th Cir. 2018) ...................................................................................................... 6

*Ramirez v. United States*,
　799 F.3d 845 (7th Cir. 2015) ...................................................................................................... 5

*Rufo v. Inmates of Suffolk County Jail*,
　502 U.S. 367 (1992) .................................................................................................................... 8

*Sadowski v. Bombardier Ltd.*,
　539 F.2d 615 (7th Cir. 1976) ...................................................................................................... 6

*Thomas v. First Federal Savings Bank of Indiana*,
　653 F. Supp. 1330 (N.D. Ind. 1987) ........................................................................................... 3

**Statutes**

12 U.S.C. § 5536(a)(1)(A) ................................................................................................................ 4

15 U.S.C. § 1691(a) .......................................................................................................................... 3

**Federal Rules of Civil Procedure**

60(b) ................................................................................................................................ 1, 2, 4, 6, 7, 8, 10

60(b)(1) ....................................................................................................................................... 5, 11

60(b)(2) ....................................................................................................................................... 5, 11

60(b)(3) ....................................................................................................................................... 5, 11

60(b)(4) ............................................................................................................................................ 5

60(b)(5) ....................................................................................................................................... 5, 8

60(b)(6) ................................................................................................................................ 4, 5, 6, 11

60(c)(1) .......................................................................................................................................... 11

**Regulations**

12 C.F.R. § 1002.4(b) ................................................................................................................ 3, 9

**Other Authorities**

Brief of First Amendment Legal Scholars as Amicus Curiae,
　　*CFPB v. Townstone Financial*, No. 23-1654 (June 26, 2023, 7th Cir.) ............................ 10

CFPB, Enforcement by the Numbers, https://www.consumerfinance.gov/enforcement/
　　enforcement-by-the-numbers ........................................................................................ 11

Department of Justice, General Civil Settlement Principles (Nov. 2024),
　　https://www.justice.gov/jm/1-18000-general-civil-settlement-principles#118300 .......... 12

EEOC, Standards and Procedures for Settlement of EEOC Litigation,
　　https://www.eeoc.gov/standards-and-procedures-settlement-eeoc-litigation ................... 12

FTC, FTC Sends More Than $1 Million in Full Refunds to Customers Deceived by False
　　Claims of "N95-Grade" Zephyr Face Masks (Jan. 13, 2025), https://www.ftc.gov/news-
　　events/news/press-releases/2025/01/ftc-sends-more-1-million-full-refunds-customers-
　　deceived-false-claims-n95-grade-zephyr-face-masks ....................................................... 11

S. Rep. No. 94-589 ......................................................................................................................... 3

**INTEREST OF AMICI CURIAE[1]**

Amici are fourteen nonprofit organizations focused on fair housing and consumer protection: National Fair Housing Alliance, Public Citizen, the American Civil Liberties Union, ACLU of Illinois, Better Markets, Chicago Lawyers' Committee for Civil Rights, Consumer Federation of America, Fair Housing Center of Central Indiana, HOPE Fair Housing Center, Metropolitan Milwaukee Fair Housing Council, National Association of Consumer Advocates, National Consumer Law Center, Open Communities, and South Suburban Housing Center. Amici submit this memorandum because they are concerned that the parties' joint motion, which seeks vacatur of a final judgment and order, is an improper use of Rule 60(b)(6) that poses risks both to the orderly conduct of litigation and to the consumer-protection and anti-discrimination interests of the organizations and people on whose behalf they work. Given the lack of adversarial argument on the parties' joint motion, amici believe that this memorandum will be helpful to the Court in considering the motion.

**INTRODUCTION**

Federal Rule of Civil Procedure 60(b) allows a party to seek relief from a final judgment outside the normal appellate procedure "under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). The Rule's drafters, and the Supreme Court and other courts tasked with interpreting it, have created guardrails designed to "balance the availability of post-judgment relief with finality interests." *Mendez v. Republic Bank*, 725 F.3d 651, 657 (7th Cir. 2013). Those guardrails serve "the social interest in expedition and finality in litigation." *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800–01 (7th Cir. 2000). The audacious relief requested by the parties in their

---

[1] This amicus curiae memorandum was not authored in whole or part by counsel for a party, and no one other than amici curiae or their counsel made a monetary contribution to the preparation or submission of this memorandum.

1

joint motion to vacate, ECF 145, disregards those guardrails. Applying Rule 60(b), the motion should be denied.

In 2020, after a three-year investigation during the first Trump administration, the Consumer Financial Protection Bureau (CFPB) filed this case. It then litigated the case for over four years, before entering into an arms-length settlement agreement with Defendant Townstone Financial, Inc. (Townstone). That agreement was memorialized in a stipulated final judgment entered by this Court. *See* ECF 138.

The parties now move this Court to vacate that final judgment pursuant to Rule 60(b). "As a general rule, relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *See Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (citation and internal quotation marks omitted). The parties here do not come close to making that showing.

The only new circumstance that the parties cite as the basis for vacatur is that CFPB is now under new leadership who believe that the case "should not have been filed" five years ago. Memorandum in Support of Motion to Vacate (Mem.), ECF 145-1, at 2. The new leaders of CFPB are, of course, entitled to that opinion and to set forward-looking policy and litigation direction for the agency in accordance with those views. But Rule 60(b) is not a magic eraser that they can invoke to undo final judgments from earlier civil litigation with which they disagree on the basis of policy, not new information about the law or facts.

Moreover, the unprecedented relief sought here would invite a host of similar docket-clogging motions at the beginning of each new presidential administration, undermining public confidence in the finality of judicial orders and wasting the courts' and agencies' time rehashing old cases instead of addressing current controversies. The parties point to no other case where a

court anywhere in the country vacated a final judgment because incoming agency leadership disagreed with the decision to litigate the case leading to that judgment. This Court should not set that dangerous and destabilizing precedent.

## BACKGROUND

Congress passed the Equal Credit Opportunity Act (ECOA) to ensure "evenhanded treatment" in the market for credit. S. Rep. No. 94-589, at 4 (1976). ECOA prohibits discriminating with respect to "any aspect of a credit transaction" "on the basis of race, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). Regulation B, promulgated by the Federal Reserve over 50 years ago to carry out ECOA, prohibits a creditor from making oral or written statements that "would discourage on a prohibited basis a reasonable person from making or pursuing" a credit application. 12 C.F.R. § 1002.4(b).

Townstone is a mortgage lender based in Chicago that also operates in Indiana, Michigan, Wisconsin and Florida. *CFPB v. Townstone Fin., Inc.*, 107 F.4th 768, 771 (7th Cir. 2024). Townstone came to the CFPB's attention in 2017 because its rate of mortgage lending to black borrowers and in majority-black neighborhoods showed a statistically significant disparity on a "redlining screen" that CFPB staff conducted on Home Mortgage Disclosure Act (HMDA) data.[2] Bishop Decl., ECF 145-2 at ¶ 5. In the course of investigating Townstone, CFPB learned of the Townstone Financial Show, a long-form marketing program that Townstone broadcast on AM radio and made available as a podcast on its website and through social media. Townstone employees, including its CEO, made several comments on the Townstone Financial Show that, the

---

[2] "Redlining" means "mortgage credit discrimination based on the characteristics of the neighborhood surrounding the would-be borrower's dwelling." *Cartwright v. Am. Sav. & Loan Ass'n*, 880 F.2d 912, 913 n.1 (7th Cir. 1989) (quoting *Thomas v. First Fed. Sav. Bank of Ind.*, 653 F. Supp. 1330, 1337 (N.D. Ind. 1987)).

3

CFPB alleged, would discourage a reasonable person from applying for a mortgage with Townstone on the basis of race in violation of ECOA and Regulation B.

For example, the CFPB recounted comments about Confederate flags, description of the south side of Chicago as "hoodlum weekend," and reference to a particular store location as "Jungle Jewel" and "a scary place" because its patrons were "people from all over the world." *Townstone*, 107 F.4th at 772 (citing First Am. Compl., ECF 27 at ¶¶ 33–37). The CFPB alleged that, between 2014 and 2017, only 1.4% of Townstone's loan applications came from African Americans in the Chicago MSA, and less than 1% came from majority African-American neighborhoods—both figures far lower than those of its peers in the Chicago-area lending market. *See* First Am. Compl., ECF 27 at ¶¶ 42–46.

In 2020, under the leadership of Trump-appointee Kathy Kraninger, the CFPB filed suit against Townstone under ECOA, Regulation B, and the Consumer Financial Protection Act, 12 U.S.C. § 5536(a)(1)(A). After early settlement negotiations and the start of discovery, ECF 104, this Court granted Townstone's motion to dismiss on the ground that ECOA's protections do not extend to prospective applicants. *CFPB v. Townstone Fin., Inc.*, 2023 WL 1766484, at *5, *11 (N.D. Ill. Feb. 3, 2023). The Seventh Circuit reversed, 107 F.4th at 775–76, and the parties notified this Court of their intent to settle the case approximately three months later. ECF 132. The parties then negotiated a settlement, which this Court entered as a final judgment. The judgment ordered Townstone to pay a civil penalty of $105,000 to the CFPB and to commit to various programmatic changes for a period of five years, during which time this Court retained jurisdiction. ECF 138.

Now, through their motion filed under Rule 60(b)(6), the parties seek vacatur of the judgment and a refund to Townstone of the civil penalty. ECF 145.

**ARGUMENT**

Rule 60(b) allows courts to "relieve a party … from a final judgment" in six enumerated circumstances. The first five are specific: "mistake," "newly discovered evidence," "fraud … misrepresentation, or misconduct," where "the judgment is void," and where "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(1)–(5).

Here, the parties brought their motion only under the catch-all provision of Rule 60(b)(6): "any other reason that justifies relief." As the Seventh Circuit has explained, the Rule's subsections "are mutually exclusive" and "not overlapping." *Mendez*, 725 F.3d at 657, 658. Thus, Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp v. United States*, 596 U.S. 528, 533 (2022).

**I.  Rule 60(b)(6) does not apply here.**

The Supreme Court and Seventh Circuit have both repeatedly held that the Rule 60(b)(6) catch-all provision sets a higher bar than the other Rule 60(b) provisions and must be reserved for "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535; *see Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 668 (7th Cir. 2014) ("Relief under this provision is an 'extraordinary remedy' and should be granted only in 'exceptional circumstances.'" (quoting *Bakery Machinery*, 579 F.3d at 848)).

Cases cited by the parties both reinforce Rule 60(b)(6)'s high bar and reveal how far the circumstances in which the Rule applies diverge from the facts of this case. For example, in *Klapprott v. United States*, 335 U.S. 601 (1949), the Supreme Court vacated a default judgment against a German national after determining that he "was held in prison" for "four and one-half years" based "on charges [of disloyalty] that the Government was unable to sustain." *Id.* at 607; *see id.* at 607–08 ("No other conclusion can be drawn except that this long imprisonment was wrongful."). And in *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), the Seventh Circuit

5

granted relief under Rule 60(b)(6) to a habeas petitioner whose "postconviction counsel abandoned [him] on appeal, thus depriving him of the opportunity to pursue his Sixth Amendment claims." *Id.* at 850. These scenarios bear no similarity to this case, where the operative facts cannot reasonably be disputed and the final judgment, entered at the parties' request, presented no specter of fundamental unfairness.

The parties do not contend that they meet the "extraordinary circumstances" standard. Instead, they suggest that the joint nature of their filing should relieve them from it, contending that the Rule 60(b)(6) standard is "relaxed" when parties move jointly to vacate a judgment. Mem., ECF 145-1 at 3. The cases they cite for this proposition, however, arose in the context of parties entering into a settlement, during the pendency of an appeal, that supported vacatur of the appealed judgment. *See, e.g.*, *Mayes v. City of Hammond*, 631 F. Supp. 2d 1082, 1084 (N.D. Ind. 2008), *adopted*, 2008 WL 4099699 (N.D. Ind. Sept. 2, 2008); *Orlowski v. Eriksen*, 2010 WL 2401938, at *1 (N.D. Ill. June 10, 2010); *Cummins v. Illinois*, 2010 WL 334514, at *1 (S.D. Ill. Jan. 25, 2010); *see also Marcus A.T. v. Comm'r of Soc. Sec.*, 2023 WL 3304727, at *1–2 (S.D. Ill. May 8, 2023) (after court-ordered mediation, granting joint motion to vacate and remand for further administrative proceedings). Under those specific circumstances, vacatur of the judgment being appealed serves the purposes of facilitating settlement and expediting final resolution of the case. Here, by contrast, the parties do not seek to vacate a district court judgment to *enable* a settlement; they seek to *undo* a settlement that required the Court's judgment.

As the Seventh Circuit has stated, Rule 60(b) is not an escape hatch for parties who simply regret their past litigation choices: "Rule 60(b) is not to be invoked to give relief to a party who has chosen a course of action which in retrospect appears unfortunate or where error or miscalculation is traceable really to a lack of care." *Sadowski v. Bombardier Ltd.*, 539 F.2d 615,

6

618 (7th Cir. 1976), *cited in Pearson v. Target Corp.*, 893 F.3d 980, 985 (7th Cir. 2018). But that is what the parties here are attempting.

Specifically, the parties seek to use Rule 60(b)(6) to unwind the final judgment because the new leadership at the CFPB regrets that the previous Trump administration filed the case, suggesting that Townstone was improperly targeted based on its "viewpoints." *See* Mem., ECF 145-1 at 2. But the Seventh Circuit's holding that "Regulation B's prohibition on the discouragement of prospective applications is consistent with the plain text of the ECOA," *Townstone*, 107 F.4th at 777, and its discussion of the facts alleged in the complaint, belie the parties' assertion that the judgment in this case was "inequitable and undermines confidence in the judicial process." Mem., ECF 145-1 at 2. As the Supreme Court put it, "[b]y no stretch of imagination can [a] voluntary, deliberate, free, untrammeled choice" justify Rule 60(b) relief. *Ackermann v. United States*, 340 U.S. 193, 200 (1950).

## II. Rules 60(b)(1)–(5) do not apply here.

By relying exclusively on Rule 60(b)(6) for relief, the parties effectively concede that the five specific reasons set forth in Rule 60(b) do not apply. *Kemp*, 596 U.S. at 533. Nonetheless, the parties allude throughout their memorandum to considerations captured by other provisions of Rule 60(b), perhaps hoping that stirring in a pinch of what it calls a mistake and a dash of what it asserts to be newly discovered evidence will add up to a bad taste that sways the Court, although none of these ingredients on its own is sufficient for vacatur. As a legal matter, however, because each provision is mutually exclusive, the parties' attempt falls flat.

In any event, the parties' allusions to mistake, misconduct, and newly discovered evidence also fail as a factual matter, while raising troubling policy implications in the process. The Bishop declaration charges that CFPB lawyers "misled their superiors," Bishop Decl., ECF 145-2 at ¶ 4,

7

suggesting that former Director Kraninger may have made her decision to litigate based on incomplete or inaccurate information. But the points purportedly "omitted" or "misstated" in the memo on which Kraninger apparently relied, *id.* ¶ 12, primarily reflect the parties' disagreement with a reasonable decision not to describe law somewhat attenuated from the case at hand. For example, the Bishop declaration faults CFPB lawyers for omitting case law from outside Regulation B, *e.g.*, *id.* ¶ 12(c) ("Outside Reg B"), but CFPB lawyers reasonably may not have considered that case law the most relevant authority for analyzing a case to be brought under Regulation B. And while the memo ominously alludes to "undisclosed tactics" used during the investigation, Mem., ECF 145-1 at 6, the tactics referred to seem to be use of a software program that automated the process of searching hours of publicly available audio programming for key terms—certainly a more efficient use of government resources than having investigators listen to every episode in real time. And that process assisted the CFPB in identifying comments that were relevant to the case and that Townstone has not contested.

    The parties' gesture towards showing newly discovered evidence, Mem., ECF 145-1 at 5, suffers from the same combination of inflammatory rhetoric and lack of substance. It also undermines bedrock confidentiality principles by suggesting that the target of a government investigation is entitled to work-product information while litigation is being contemplated or is underway. Giving credence to these arguments could also inhibit counsel (in and out of the government) from openly communicating with their clients.

    Finally, the parties cite cases in which, under Rule 60(b), consent decrees were modified in light of changed factual or legal circumstances. *See* Mem., ECF 145-1 at 4 (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 380, 393 (1992)). Such modifications are typically sought under Rule 60(b)(5) on the ground it would no longer be equitable for the judgment to

remain in effect prospectively. The Supreme Court in *Rufo* set out a two-part test for courts to apply when a party seeks such forward-looking relief from a previously entered judgment: The party seeking modification must first establish "that a significant change in circumstances warrants revision of the decree." 502 U.S. at 383. If the party meets that burden, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.*

Here, the parties do not point to any changed circumstances since the entry of judgment five months ago. For example, while the parties assert that six racially charged statements from the Townstone Financial Show were not "explicitly and unambiguously hostile on a prohibited basis," Mem., ECF 145-1 at 6, they do not claim that any of the statements were fabricated or that the complaint did not accurately describe them. And the parties rightly do not contend that the statements were legally irrelevant, given that the Seventh Circuit recited five of the six statements in its opinion in this case. *See Townstone*, 107 F.4th at 772. Whether any of these statements, or all of them together, would have discouraged a "reasonable [black] person from making or pursuing" a mortgage loan, 12 C.F.R. § 1002.4(b), with Townstone in violation of Regulation B, never reached a decisionmaker because of the settlement and consent order. But there is no dispute that Townstone employees made the statements.

Similarly, Townstone's argument that its statements were protected First Amendment speech is not a late-breaking legal development. To the contrary, Townstone made its constitutional arguments to the CFPB before litigation was even filed, *see* Bishop Decl., ECF 145-2 at ¶ 15, and the constitutional issues were fully briefed to this Court through Townstone's motion to dismiss, *see* ECF 32, at 12–20; ECF 35, at 15–27. This Court did not reach those issues because it ruled on statutory grounds, and the Seventh Circuit declined to reach a legal issue not passed upon below. *See Townstone*, 107 F.4th at 777. But the parties and the Court had full briefing on

9

the issue before final judgment, and presumably the parties' assessments of the strength of the argument played a part in valuing the case for settlement.

Moreover, the First Amendment argument that the parties press in their motion, Mem., ECF 145-1 at 7–11, flows from a premise—that the CFPB "targeted" Townstone for litigation because of its CEO's political views—for which the parties offer no evidentiary support (and which is contradicted by the record, *see, e.g.*, Bishop Decl., ECF 145-2 at ¶ 5). And the First Amendment is no impediment to an enforcement action targeting illegal conduct—such as discouraging lending applications on a discriminatory basis—simply because that illegal conduct was carried out in part through speech. *See* Brief of First Amendment Legal Scholars as Amicus Curiae, *CFPB v. Townstone Fin.*, No. 23-1654 (June 26, 2023, 7th Cir.). The parties chose to resolve this case through a stipulated final judgment rather than to litigate these constitutional issues on remand from the Seventh Circuit. Rule 60(b) does not afford them an opportunity to revisit those issues.

The motion makes clear that the CFPB's new political leadership finds the facts surrounding Townstone's alleged discrimination less egregious, and its constitutional defenses more compelling, than did their predecessors in the first Trump administration. This change of heart is not the sort of change in circumstances that supports relief under Rule 60(b).

**III.    The unprecedented relief sought here would create perverse incentives and harm the public interest.**

The parties cite no case in which a court vacated a final judgment and ordered return of civil penalties under Rule 60(b) because new agency leadership disagreed with the litigation choices made by their predecessors. This Court should be wary of setting that precedent.

If granted, the relief requested by the parties would incentivize new agency leadership looking to separate themselves ideologically from the political leadership of the prior

administration to file such motions as a way of staking out their distinct political identities, particularly in high-profile or controversial cases, in the early days of each new presidential administration. Likewise, private parties would be incentivized to view every new administration as an opportunity for renegotiation of completed litigation. Defendants with whom government agencies have entered into consent decrees will see an order vacating the judgment in this case as a signal that they may be able to secure a better deal—or escape the previously negotiated deal entirely—based merely on the inauguration of a new president and appointment of new agency leadership. Such tides of politically motivated Rule 60(b) motions and renegotiation every four or eight years could unnecessarily burden courts' already crowded dockets, as well as bog down agencies in lobbying over final judgments, taking resources away from serving the mission of each agency and meeting the needs of the American people.

Moreover, unlike Rules 60(b)(1)–(3), which require that any motion be filed within one year of the judgment, Rule 60(b)(6)'s application has no specific temporal limitation, only a general exhortation to act "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Thus, establishing a precedent that Rule 60(b)(6) relief is available in situations like this could open the door to motions to unwind judgments entered years or even decades earlier, thereby undermining principles of finality on which an orderly civil justice system depends.

Finally, the fact that the parties here seek, as part of their requested relief, the return by CFPB to Townstone of a $105,000 civil penalty raises the specter that payments made to third parties as part of consent decrees may also be clawed back. For example, since 2011, CFPB enforcement actions have secured $19.7 billion in relief for consumers as of January 31, 2025. *See* CFPB, Enforcement by the Numbers, https://www.consumerfinance.gov/enforcement/enforcement-by-the-numbers.

Other government agencies likewise obtain restitution for aggrieved individuals as a component of consent decrees. The Federal Trade Commission often secures relief for consumers through negotiated consent decrees. *See, e.g.*, FTC, FTC Sends More Than $1 Million in Full Refunds to Customers Deceived by False Claims of "N95-Grade" Zephyr Face Masks (Jan. 13, 2025).[3] Other government agencies do as well.[4] Requiring a consumer who was harmed by a deceptive or discriminatory practice and received money pursuant to a final judgment to then return money paid to them as part of a government settlement or court-ordered consent decree would be untenable, throwing government enforcement actions into chaos and eroding the public's faith in both government agencies and the civil justice system.

## CONCLUSION

This Court should deny the parties' joint motion for relief from and vacatur of the final judgment and order to which they previously stipulated.

---

[3] https://www.ftc.gov/news-events/news/press-releases/2025/01/ftc-sends-more-1-million-full-refunds-customers-deceived-false-claims-n95-grade-zephyr-face-masks.

[4] DOJ, General Civil Settlement Principles (Nov. 2024), https://www.justice.gov/jm/1-18000-general-civil-settlement-principles#118300; EEOC, Standards and Procedures for Settlement of EEOC Litigation, https://www.eeoc.gov/standards-and-procedures-settlement-eeoc-litigation.

April 4, 2025                                    Respectfully submitted,

/s/ Joshua Karsh
Joshua Karsh
Mehri & Skalet PLLC
1237 Judson Ave.
Evanston, IL 60202
(773) 505-7533
jkarsh@findjustice.com
ARDC No. 6203096

Karla Gilbride
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amici Curiae*

13