**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Bureau of Consumer Financial Protection, | Case No. 1:20-cv-04176 |
| Plaintiff, | |
| v. | Judge Franklin U. Valderrama |
| | Magistrate Judge Heather K. McShain |
| Townstone Financial, Inc., and Barry Sturner, | |
| Defendants. | |

## PARTIES' JOINT BRIEF RESPONDING TO
## COALITION AMICUS BRIEF OPPOSING MOTION TO VACATE

## I. INTRODUCTION

Rule 60(b)(6) affords this Court ample discretion to vacate the judgment and consent decree in this case. That is true whether this Court applies the extraordinary circumstances test or the more relaxed standard that applies when both parties agree to a vacatur.

Here, after a thorough investigation, the Bureau's leadership concluded that the case against Townstone lacked any evidentiary and legal foundation and was pursued because the government disagreed with Townstone's views. Amici present no reason to second-guess that judgment. Instead, they attack a strawman, reducing the entire motion to a "mere change in leadership," and positing a parade of horribles that have nothing to do with this case. In their quest, they ignore the facts recounted in the detailed ten-page Bishop Declaration and the actual procedural nuances of this case.

To be sure, it is not every day that a federal agency conducts a post-judgment investigation and publicly reveals serious legal and constitutional problems in a case. But that is precisely what makes this case extraordinary. Amici's effort to present this case as outside the bounds of Rule 60(b)(6) ignores that CFPB's actions—both now and under previous leadership—are ample reason to vacate. It should go without saying that executive agencies must ensure that they have solid legal grounds to pursue potentially crushing investigations and lawsuits against private parties. It *does* go without saying that agencies have an obligation to follow the First Amendment, that doing so is always in the public interest, and that no agency is entitled to target individuals based on their views simply because the agency might be able to get away with it through attrition.

The desire for finality in judgments should not prevent this Court from vacating a judgment when the government is admitting to institutional failures that led to a violation of

constitutional rights and there is no impact on precedent or judicial resources. As to the public interest—it would only be vindicated by a grant of this joint motion.

This Court should grant the motion and vacate the judgment and settlement in this case.

## II.    ARGUMENT

### A.    AMICI IGNORE OR MISCONSTRUE RULE 60(b) CASE LAW

Amici do not dispute that Rule 60(b)(6) "is fundamentally equitable," *Ramirez v. United States*, 799 F.3d 845, 851 (7th Cir. 2015) (citations omitted), that it is "open-ended" and "flexible," *Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018) (citations omitted), and that it gives courts the discretion to vacate judgments to "accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). In short, Amici do not dispute, and cannot dispute, that this Court has ample discretion to grant the motion to vacate.

Instead, Amici seek to downplay the extraordinary circumstances of this case by claiming that the parties have cited no cases with similar facts. As a threshold matter, Rule 60(b)(6) cases do not fall into neat categories; otherwise, they would have been brought under subsections 1–5, or, if there were some additional, frequently recurring category, the Rule would probably have been amended to include it. But there are overarching principles from the cases where courts granted Rule 60(b)(6) motions, including focus on justice and equities and, in doing so, considering the totality of the circumstances of each case. *See Ramirez*, 799 F.3d at 851 (stating that courts must assess "all of the circumstances" of each case in assessing a motion under rule 60(b)(6)). Yet, Amici baldly assert that *Klapprott*, 335 U.S. at 615, and *Ramirez*, 799 F.3d at 851, involved injustice, whereas this case does not. Mem. of Amici at 5–6, ECF No. 147-1. But this is bracingly tone deaf to the facts revealed in the Bishop Declaration. The Bureau made this motion, not because of a change in leadership, but because it discovered that the Townstone case

lacked any evidence of actual discrimination, lacked any actual consumers who complained about anything Townstone did, and was both brought and pursued because CFPB disliked Townstone's speech and felt that "'the gravity of intentional discrimination'" in the industry as a whole required a "'strong need for deterrence.'" Bishop Decl. ¶ 9, ECF No. 145-2.

Bureau leadership's current view that this was unjust is not a "political" judgment, but a legal and constitutional judgment. As noted in the parties' opening brief, government may not target individuals for legal action based on their views. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024) (Government officials cannot "use the power of the State to punish or suppress disfavored expression"); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230–31 (7th Cir. 2015) ("A public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights[.]"). And it is the very definition of unjust to hold Townstone liable for the alleged actions of the entire mortgage industry— especially where, as here, no actual consumers complained about Townstone's statements or actions, or claimed it discriminated against them. *See* Bishop Dec. ¶ 10, ECF No. 145-2. That Amici choose to call the motion "audacious" and "unprecedented" indicates their blinkered view of the law, the Constitution, and the facts of this case. Amici simply ignore that the purpose of Rule 60(b)(6)—to allow courts to vacate a judgment when justice so requires—necessarily means every case will be sui generis.

Amici also claim that the relaxed standard that applies when all parties consent to a motion to vacate does not apply here because this case was not settled on appeal. Mem. of Amici at 6, ECF No. 147-1. But nothing in the decisions the parties cited suggests that the standards under Rule 60(b)(6) can be relaxed only when two parties agree to settle on appeal, and that conclusion would make no sense. *See* Mem. of Law in Supp. of Joint Mot. at 3–4, ECF No. 145-

1 (citing cases). To be sure, agreement among the parties does not guarantee vacatur, because, as the Supreme Court has said, "[j]udicial precedents are . . . not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26–27 (1994) (citation omitted). But that concern is not present here, because the judgment to be vacated is not a merits decision by this Court, but the result of a prior settlement between the two parties now seeking vacatur. Thus, the equitable factors courts consider in assessing a Rule 60(b)(6) motion in such circumstances—the "public interests in precedent, preclusion, and judicial economy and the circumstances, hardships, and interests of private parties," *Mayes v. City of Hammond*, 631 F. Supp. 2d 1082, 1088 (N.D. Ind. 2008)—all weigh in favor of vacatur.

Here, vacatur cannot affect precedent or preclusion, because the judgment neither adjudicated any issues nor established precedent. The parties agreed to settle "without adjudication of any issue of fact or law," Stipulated Final J. and Order at 1, ECF No. 138, and Townstone neither admitted nor denied the allegations in the amended complaint except those necessary to establish jurisdiction. *Id.* ¶ 2. The only precedent set during this case was the Seventh Circuit's decision on appeal, and vacatur will not affect that decision.

Nor will vacatur waste judicial resources. The settlement took place very soon after the Seventh Circuit remanded the case and required little action from the Court. And although the motion for vacatur requires some judicial resources, the issues now raised are extremely important, and, in any event, courts often vacate judgments under Rule 60(b)(6) after merits decisions, even those involving jury trials. *See, e.g.*, *Marcus A. T. v. Comm'r of Soc. Sec.*, No. 3:21-CV-273-DWD, 2023 WL 3304727, at *2 (S.D. Ill. May 8, 2023) (judgment entered after court affirmed agency decision); *Cummins v. Illinois*, No. 02-CV-4201-JPG, 2010 WL 334514,

at *2 (S.D. Ill. Jan. 25, 2010) (summary judgment); *Orlowski v. Eriksen*, No. 07 C 4015, 2010 WL 2401938 (N.D. Ill. June 10, 2010) (judgment entered after jury trial); *Mayes*, 631 F. Supp. 2d at 1088 (judgment entered after jury trial).

Vacatur will also not affect the interests of any private parties, beyond Townstone, because the settlement contained no terms that benefited private parties. The Stipulated Final Judgment and Order made clear that "[n]othing in this Order will be construed to prevent Townstone from dissolving or ceasing its operations" after the civil monetary penalty was paid. Stipulated Final J. and Order ¶ 37, ECF No. 138. On November 10, 2024, Townstone notified CFPB that it intended to wind down its operations by the end of the year, and it has done so. As a result, Townstone has no remaining obligations under the settlement. And, as noted, no consumers complained about Townstone's statements or actions, and there was no redress to any consumers.

Finally, vacatur serves the public interest in several ways. First and foremost, "protecting First Amendment freedoms [is] always in the public interest." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). And even where constitutional rights are not at issue, courts may not balance the interests of parties directly affected by unlawful government action against the interests of the public in vigorous enforcement, for "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021); *see also Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 595 U.S. 109, 120 (2022) (stating that when a rule exceeds an agency's authority, the court should not "weigh [] tradeoffs"

between its intended effect and harms).

Next, Amici claim that the parties may not rely on Rule 60(b)(6) because some aspects of the parties' argument seem to Amici like they belong under one of the other subsections of the Rule, each provision of which is "mutually exclusive." Mem. of Amici at 7, ECF No. 147-1. First, the mutual exclusivity rule exists to prevent parties from using subsection (6) to circumvent the one-year limitation in subsections (1) through (3). *Mendez v. Republic Bank*, 725 F.3d 651, 657 (7th Cir. 2013). But that concern is not present here because the motion was made well within one year of the judgment. Second, Amici's argument again simply ignores the serious problems the Bureau uncovered, the detailed ten-page declaration that supports the motion, and the equitable purpose of Rule 60(b)(6). This case represents a serious miscarriage of justice, and Rule 60(b)(6) is the appropriate vehicle here.

Finally, in yet another effort to ignore the extraordinary circumstances revealed in the parties' motion, Amici contend that vacatur is improper because it does not meet the standards for modifying a consent decree, particularly the requirement of a change in circumstances. Mem. of Amici at 8–9, ECF No. 147-1. But the revelation that CFPB's investigation and lawsuit were legally baseless and targeted Townstone for its speech is most definitely a change in circumstances. Moreover, Amici misunderstand the reasoning of the cases on which they rely, again treating what all courts have recognized as a "flexible standard" for Rule 60(b) as rigid and "talismanic." *See O'Sullivan v. City of Chicago*, 396 F.3d 843, 860–62 (7th Cir. 2005). True, when courts assess a motion to vacate a consent decree effecting institutional reform—such as the multi-year construction of a new prison (*Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 380, 393 (1992)), or a class action challenging hiring of city employees based on political patronage (*O'Sullivan*)—courts are careful to ensure that a motion to alter the consent decree is

7

truly based on new circumstances and that the proposed modification will not harm the interests of the many people affected by the decree. Here, the parties affected by the consent decree are Townstone and the Bureau. And the public interest here aligns with the interests of the parties— preventing constitutional violations and ensuring that government agencies follow proper procedures in bringing enforcement actions are always in the public interest.

Amici's other concerns are baseless. Vacatur in this case will not open the floodgates to other efforts to vacate cases, unless those other efforts involve cases, such as this one, in which agencies have used baseless lawsuits to target individuals because of their speech. Nor will vacatur here raise the specter of efforts to claw back funds distributed to consumers, because, notably, no consumers complained about anything Townstone did and there was no redress of any kind to consumers. The Bureau will refund the penalty from its Civil Penalty Fund.

## B. AMICI IGNORE THE FACTS REVEALED IN THE BISHOP DECLARATION

Whether this Court applies the extraordinary circumstances test or the more relaxed standard that applies when both parties consent to vacatur, the parties' motion should be granted. The circumstances in this case are truly extraordinary.

The Bishop Declaration reveals that there never was a valid reason for CFPB to file a lawsuit against Townstone. Boiled down to its essence, CFPB's case turned on an alleged statistical disparity in minority mortgage applications between Townstone and unknown (and unrevealed) "peer lenders" and six statements that represented a mere sixteen minutes out of 78 hours of total programming from Townstone's radio show. Bishop Decl. ¶¶ 5, 7–9, ECF No. 145-2. As the parties pointed out in their opening brief, a mere statistical disparity in applications is not actionable under ECOA. *See* Mem. of Law in Supp. of Joint Mot. at 6–7, ECF No. 145-1.

8

And, indeed, CFPB never argued in the case that the alleged statistical disparity, alone, could sustain its case. It admitted all along that this was a discouragement case under Regulation B.[1]

As a consequence, the entire case hinged on the six statements from the Townstone Financial Show. Yet, because of the Bureau's recent investigation, it is now clear that:

- CFPB admitted internally that "[m]uch of the content of the show is overtly political, and often highly critical of the Bureau." Bishop Decl. ¶ 8(g), ECF No. 145-2. But "speech on matters of public concern is at the heart of the First Amendment's protection." *See Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011).

- CFPB believed the remarks were "disconcerting" and "could be interpreted as inappropriate, incorrect, or insensitive," and "insulting to African-American and Hispanic listeners." Bishop Decl. ¶ 10, ECF No. 145-2. Putting aside that Townstone submitted a survey that included African-Americans by a consumer testing firm showing that these respondents found no offense, it is black-letter law that the government may not punish speech simply because it is offensive to some listeners. *See, e.g.*, *303 Creative LLC v. Elenis*, 600 U.S. 570, 588 (2023).

- Despite having no evidence of discrimination, CFPB decided to press forward in the case to "provide an opportunity for further investigation into Townstone's views on race and racism." Bishop Decl. ¶ 9, ECF No. 145-2. But government may not sue or otherwise punish individuals because of their views on anything, racism included. *See, e.g.*, *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) ("The government may not discriminate against speech based on the ideas or opinions it conveys.").

- CFPB employees saved captures of tweets posted by Townstone's owner in the course of unrest following the May 25, 2020, death of George Floyd. A pdf capture of the account profile page is filenamed "Townstone Fin Tweets BS posts that he was victim of police.pdf." Another capture, bearing a last modified date of June 8, 2020, and filenamed "Townstone tweet from June 2.pdf," features Townstone's owner expressing opposition to looting. Bishop Decl. ¶ 17, ECF No. 145-2. But government may not "use the power of the State to punish or

---

[1]For example, in its opposition to Townstone's motion to dismiss, CFPB stated that "[c]ontrary to Townstone's allegations that the Bureau punished Townstone for things like not hiring loan officers [based on race] . . . the Bureau focused on conduct that would discourage, on the basis of race, a reasonable potential applicant." Br. in Opp. to Mot. to Dismiss at 26 n.126, ECF No. 35; *see also id.* at 26 ("And the hypothetical creditor confusion Townstone alleges is premised on mischaracterizations of the Bureau's enforcement action, which, as discussed above, focuses on discouragement, on the basis of race, of reasonable prospective applicants."). And on appeal, CFPB never argued that this Court erred in dismissing the entire case based on its conclusion that ECOA did not authorize Regulation B.

suppress disfavored expression." *Vullo*, 602 U.S. at 188; *see also Backpage.com, LLC*, 807 F.3d at 230–31 (same).

Simply put, CFPB targeted Townstone because agency attorneys believed its CEO and its employees had engaged in wrong-think. The Bureau had no evidence of actual discrimination or even complaints by any consumers, and in fact, Townstone both hired minority loan officers and engaged in outreach to minority communities. Yet, a federal agency dragged a legitimate business through a seven-year ordeal because agency personnel didn't like what the owner and employees said.

Amici attempts to waive all of this away with the conclusory assertion that "the First Amendment is no impediment to an enforcement action targeting illegal conduct . . . simply because that illegal conduct was carried out in part through speech." Mem. of Amici at 10, ECF No. 147-1. But the Townstone case never involved any wrongful conduct. The entire case was built on speech that CFPB lawyers did not like. That speech was not bigoted—it was, at worst, offensive—but even if it were bigoted, "bigotry, *per se*, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse . . . action" taken by the defendant against the plaintiff. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). Not one element of a discrimination claim ever existed in this case. It bears repeating that the Bureau identified no harmed consumers and no aggrieved party came forward to claim harm by discrimination. And that is why, notwithstanding all the zeal of the Bureau's prosecution of this case, there was no redress component. There was talking on a radio show and podcast and a government agency filled with motivated lawyers who did not like what was said.

### III. CONCLUSION

For the foregoing reasons, this Court should grant the motion and vacate the Stipulated

Final Judgment and Order.

Dated: April 15, 2025.

Respectfully submitted,

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU** | **TOWNSTONE FINANCIAL, INC., AND BARRY STURNER** |
| _/s/ Mark Paoletta_ | _/s/ Steven M. Simpson_ |
| MARK PAOLETTA (DC Bar #422746) | STEVEN M. SIMPSON |
| Chief Legal Officer | DC Bar No. 462553 |
| Mark.Paoletta@cfpb.gov | ASHLEY TORKELSON LEVINE |
| Tel: (771) 959-6080 | AZ Bar No. 032544 |
| VICTORIA DORFMAN (DC Bar # 487567) | Pacific Legal Foundation |
| (NY Bar #4656625) | 3100 Clarendon Boulevard, Suite 610 |
| Victoria.Dorfman@cfpb.gov | Arlington, VA 22201 |
| DANIEL SHAPIRO (FL Bar #1011108) | Tel: (202) 888-6881 |
| Daniel.Shapiro@cfpb.gov | SSimpson@pacificlegal.org |
| | ALevine@pacificlegal.org |
| 1700 G Street NW | |
| Washington, DC 20552 | OLIVER J. DUNFORD |
| | FL Bar No. 017991 |
| _Attorneys for Plaintiff_ | Pacific Legal Foundation |
| | 4440 PGA Boulevard, Suite 307 |
| | Palm Beach Gardens, FL 33410 |
| | Tel: (916) 503-9060 |
| | ODunford@pacificlegal.org |
| | |
| | SEAN P. BURKE |
| | Mattingly Burke Cohen & Biederman LLP |
| | 155 E. Market St., Suite 400 |
| | Indianapolis, IN 46204 |
| | |
| | MARX DAVID STERBCOW |
| | The Sterbcow Law Group LLC |
| | 824 Elmwood Park Boulevard, Suite 205 |
| | New Orleans, LA 70123 |
| | |
| | _Attorneys for Defendants_ |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 15, 2025, I electronically filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will cause a copy to be served upon counsel of record.

<u>/s/ *Steven M. Simpson*</u>
Steven M. Simpson